6 P.3d 498

2000-NMCA-062

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Margo PATSCHECK, Defendant–
Appellant,**

and

**State of New Mexico, Plaintiff–Appellee,**

v.

**Richard Patscheck, Defendant–Appellant.**

No. 20,003, 20,030.

Court of Appeals of New Mexico.

June 7, 2000.

Certiorari Denied, Nos. 26,414,
26,418, July 24, 2000.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Lisabeth L. Occhialino, Assistant Appellate Defender, Santa Fe, for Appellant Margo Patscheck.

Liane E. Kerr, Albuquerque, for Appellant Richard Patscheck.

## OPINION

WECHSLER, Judge.

{1} Defendants Margo and Richard Patscheck, co-defendants at trial and mother and stepfather of the two victims, appeal their convictions. We have consolidated their appeals because they raise many of the same issues. Only certain issues relating to suppression of evidence meet the criteria for publication under Rule 12–405 NMRA 2000. Therefore, only those issues will be published. The remainder of the opinion, including a listing of the issues and the complete disposition of the case, is contained in a memorandum opinion that will not be published.

{2} The Patschecks were convicted of multiple counts of sexual offenses against Margo's children. The counts arose from Richard's desire, and Margo's acquiescence in it, to engage in various types of sexual relations with the victims on an ongoing basis, with all people participating, over the course of six or seven years from the time the children were preteens.

*Suppression of Evidence—Search Warrants*

{3} Margo and Richard argue that the trial judge erred when he denied their motions to suppress evidence seized under the authority of search warrants. They argue that the evidence should have been suppressed because the search warrants failed to identify the items to be seized with sufficient particularity and that the searches exceeded the scope of the warrants.

{4} The affidavit in support of the October 14, 1997 search warrant requests permission to search for videotapes and still photographs of the victim and of other juveniles, for pornographic movies, and for sexual devices located in a box on the floor of the master bedroom closet. The return and inventory based on this warrant refers to a "box containing sexual toys[,] ... [a] photo album[,] ... binders [with] pornographic magazines[,] ... [a] polaroid camera, [and] 120 videotapes." The affidavit in support of the October 16, 1997 search warrant reports the successful seizure of items set forth in the October 14, 1997 search warrant and requests permission—based on a subsequent interview with Margo's daughter—to seize pornographic video cassette tapes, a computer located in the office with discs and software, a ledger guide to the video cassettes, and eight-millimeter cassettes. The return and inventory based on this warrant refers to multiple computer disks, eight-millimeter reels, an eight-millimeter projector, multiple slides, a Cumulus computer with monitor, a Packard Bell computer with monitor, and an Emerson computer.

{5} The affidavit in support of the October 20, 1997 search warrant sets forth that the affiant reviewed the material previously seized from the residence, and—based on further interviews with Margo's son and daughter—requests permission to seize pornographic video cassette tapes, a computer with discs and software, clothing used during

sexual activities, and pornographic magazines and photographs. The return and inventory based on this warrant lists the following items: "multiple video cassettes, computer disks, [pornographic] magazines, computers, [and a] scanner."

*Particularity of Search Warrants*

■ {6} Margo and Richard argue that the search warrants were impermissibly vague in their description of items the officers were authorized to seize. They argue that the warrants did not explain what constituted "pornographic movies" or "pornographic magazines," did not list the specific titles of particular pornographic movies, or did not set forth specific descriptions of "sexual devices."

■ {7} The degree of specificity required in a search warrant, however, varies depending upon the circumstances and types of items seized. *See State v. Elam*, 108 N.M. 268, 270, 771 P.2d 597, 599 (Ct.App.1989). Under the circumstances of this case, reference to the general nature of these items was sufficient. There is no indication that the officers were unable to identify applicable evidence based on the descriptions in the search warrants. The search warrants' reference to the general nature of the foregoing evidence adequately conveyed to the officers the type of materials sought. *See, e.g., State v. Jones*, 107 N.M. 503, 505, 760 P.2d 796, 798 (Ct.App.1988) (recognizing case law that holds that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as possible, considering the circumstances and the nature of activity under investigation); *see also United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir.1995) ("[G]eneric language is permissible if it particularizes the *types* of items to be seized.").

■ {8} Margo and Richard also rely upon federal cases interpreting the particularity requirement. Richard argues that the warrants failed to limit the discretion of the executing officers to search for sexual devices and films. Richard correctly notes that "[t]he Fourth Amendment prohibits issuance

of general warrants allowing officials to burrow through a person's possessions looking for any evidence of a crime." *Id.* at 727. However, the discretion left to officers executing a search warrant is properly limited when the language of a warrant "particularly describe[s] the place to be searched and the person or things to be seized." *Id.* The test for particularity is "whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *Id.*

{9} The warrants in this case, when viewed under these standards, are sufficiently particular because they convey to an executing officer the particular items to be seized, such as pornographic movies and videotapes, photographs of Margo's daughter or other juveniles, and specific brands and models of computers. Furthermore, the warrants specified the exact location of the box in which the sexual devices were located. We are satisfied that the warrants were sufficiently particular to direct an executing officer to the items to be seized, despite the generic language used to describe the types of film, photographs, and magazines. *See id.*

{10} The additional federal cases upon which Margo and Richard rely do not lead to a contrary result. *See United States v. Van Damme*, 48 F.3d 461, 465–67 (9th Cir.1995) (suppressing evidence not in plain view because the attachment describing the items to be seized was not attached to the warrant at the time of the search); *United States v. George*, 975 F.2d 72, 75–76 (2d Cir.1992) (holding portion of warrant invalid because language authorizing officers to search for " 'any other evidence relating to the commission of a crime' " failed to limit the executing officer's discretion); *United States v. Dozier*, 844 F.2d 701, 707–08 (9th Cir.1988) (holding portion of warrant invalid when warrant sought broad categories of personal papers and the executing officers could not have in good faith relied upon the language of the warrant); *United States v. Guarino*, 729 F.2d 864, 867 (1st Cir.1984) (holding warrant invalid in obscenity prosecution when language of warrant directed executing officers to seize anything that the officers thought was obscene); *In re Grand Jury Proceed-*

*ings,* 716 F.2d 493, 497–99 (8th Cir.1983) (holding warrant invalid when it authorized a search for all records for seven-year period without specifying transactions, files, or categories of documents). The language used in the warrants in this case is not as broad as that used in the warrants in the above cases. Therefore, the cited cases do not affect our conclusion that the warrants in this case are sufficiently particular.

### First Amendment

 {11} Margo and Richard both raise arguments that the search warrants did not meet the standards required to seize material presumptively protected by the First Amendment. *See Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–28, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). A search warrant infringes upon First Amendment rights if it acts as a prior restraint of protected material. *See Maryland v. Macon,* 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985). However, in the present case, no First Amendment rights were implicated. The warrants were issued not because of the ideas contained in the material, but instead to corroborate Margo's daughter's testimony. *See United States v. Layne,* 43 F.3d 127, 133 (5th Cir.1995) (stating that First Amendment was not implicated in possession of child pornography case where the "warrant was issued to seize evidence corroborating a victim's testimony.... [and] was not issued because of the ideas contained in the material"). Accordingly, any heightened level of particularity implicated by First Amendment cases is not at issue in this case.

### Scope of Search Warrant

 {12} As a corollary to their particularity arguments, Margo and Richard argue that the trial judge should have suppressed all the evidence seized under the authority of the search warrants because the executing officers exceeded the scope of the warrants. Margo and Richard rely on cases in which the Tenth Circuit held that blanket suppression of all seized evidence was a remedy when executing officers exceeded the scope of search warrants. *See United States v. Foster,* 100 F.3d 846, 848–53 (10th Cir.1996)

(holding blanket suppression was appropriate where warrant authorized search for marijuana and four guns and officers seized thirty-five items over seven hours); *United States v. Medlin,* 842 F.2d 1194, 1195–1200 (10th Cir.1988) (holding blanket suppression was appropriate where the warrant sought firearms and the search reaped a total of 667 items not identified in the warrant); *United States v. Rettig,* 589 F.2d 418, 420–23 (9th Cir.1978) (holding blanket suppression was appropriate where warrant authorized search for marijuana related items and officials used the warrant to search for evidence of a cocaine conspiracy). We have not recognized blanket suppression as a remedy for violations of warrants in New Mexico, nor need we on the facts of this case. Nonetheless, we address Defendant's arguments in full.

{13} The Tenth Circuit has recognized that blanket suppression is not always the appropriate remedy when officers exceed the scope of a search warrant. *See United States v. Le,* 173 F.3d 1258, 1269 (10th Cir. 1999). In *Le,* the Tenth Circuit noted that generally, when officers exceed the scope of a search warrant, only the evidence that was seized as a result of a search outside the scope of a warrant should be suppressed. *See id.* The Court stated that blanket suppression applies only when executing officers flagrantly disregard the terms of a search warrant. *See id.* at 1269–70. In the absence of flagrant disregard, "[t]he remedy for any improper seizure ... would be suppression of the items improperly seized." *Id.* at 1271.

{14} Based upon *Le,* even if we were to apply the Tenth Circuit's blanket suppression analysis, blanket suppression of all the evidence seized under the authority of the search warrants would not be appropriate in this case. The executing officers did not flagrantly disregard the terms of the search warrants because they only seized items of the type listed in the search warrants. *See id.* at 1269–70.

{15} In addition, the trial judge in this case analyzed the seized evidence in the manner approved by the Tenth Circuit in *Le.* At the pre-trial suppression hearing, the trial judge considered each piece of evidence to ensure that it was seized under the authority

of an applicable warrant. When the judge had problems with seized items not specified in the search warrant, the judge found the items to be inadmissible. For instance, the trial judge excluded the computer that was seized from the kitchen during the second search, but was not authorized by the second warrant (the warrant referred only to a computer in the office). Similarly, the trial judge excluded sexual devices found in Margo's daughter's room that were not found in the box in the master bedroom closet, as described in the first search warrant. The trial judge also excluded seized clothing items that were not listed in the appropriate return. In addition, although the officers searched a vehicle without an authorizing warrant, no evidence was seized from the vehicle. As a result, even if we were to accept the Tenth Circuit's application of its blanket suppression remedy, Margo and Richard are not entitled to a blanket suppression of all the evidence seized under the authority of the search warrants. *See id.* at 1269–71.

{16} Margo's reliance on *State v. Sansom*, 112 N.M. 679, 683–84, 818 P.2d 880, 884–85 (Ct.App.1991) for the proposition that blanket suppression is a proper remedy is also misplaced. In *Sansom*, we held that it was error for the court to admit an improperly seized rifle. We held that the affidavit supporting the search warrant was insufficient to demonstrate probable cause and that the admission of the rifle prejudiced the defendant. *See id.* at 681–84, 818 P.2d at 882–85. In this case, however, only the particularity and scope of the search warrants are at issue, and we have concluded that the trial judge did not admit any improperly seized evidence. *Sansom* does not suggest that blanket suppression is a remedy when the particularity or scope of search warrants is at issue. *Sansom*, therefore, does not apply.

{17} Margo and Richard further rely on *United States v. Carey*, 172 F.3d 1268, 1270–71 (10th Cir.1999). In *Carey*, the Tenth Circuit suppressed evidence of child pornography seized under a warrant authorizing officers to search for evidence of the sale and possession of cocaine. *See id.* In this case, however, the search at all times remained focused on the seizure of items related to alleged acts of sexual misconduct. At all times the warrants sought only evidence of sexual crimes and the warrants were not disregarded to seize evidence of other, unrelated crimes. The holding in *Carey* does not apply to this case.

{18} We note lastly that Margo's assertion that the officers did not have authority for printing computer documents that contained her name and billing information is without merit. First, there is no indication that this particular argument was raised below. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (stating that issues raised on appeal must have been specifically raised below). Nevertheless, the officer's authority is implicit in the search warrants' authorization to seize the computers and related documents. This case is unlike *Carey*, upon which Margo relies, because officers in that case exceeded the scope of the warrant by searching for computer files unrelated to the subject matter of the warrant. *See Carey*, 172 F.3d at 1271–76. The trial judge in this case ensured that the admitted evidence was seized under the authority of the warrant that specifically authorized such seizure. We conclude that the executing officers did not exceed the scope of the warrant when they accessed Margo's computer files.

{19} We affirm the trial court's decisions on Defendants' motions to suppress.

{20} **IT IS SO ORDERED.**

PICKARD, C.J. and ARMIJO, J., concur.