2003-NMCA-008

61 P.3d 867

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joshua GONZALES, Defendant–
Appellant.**

**No. 22,340.**

Court of Appeals of New Mexico.

Nov. 26, 2002.

Certiorari Granted, No. 27,842,
Jan. 16, 2003.

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} In this appeal, we examine the sufficiency of an affidavit submitted in support of a warrant to search a home for a gun six weeks after a reported assault with a deadly weapon. Defendant appeals the denial of his motion to suppress evidence seized as a result of the search warrant. He argues that the search warrant was invalid because (1) the information in the affidavit in support of the search warrant was stale, and (2) the warrant was overly broad in its description of the property to be seized. We affirm.

*Factual and Procedural Background*

{2} On September 21, 2000, Officer David De Los Santos of the Roswell Police Department submitted an affidavit in support of an application for a search warrant. The affidavit contained the following facts.

{3} On August 8, 2000, the Roswell Police Department received a telephone call from Delia Serna (the victim) about an alleged assault with a deadly weapon. The victim reported that while she was in the backyard of her home that day hanging laundry out to dry, she saw Defendant, whom she knew as Josh Gonzales, point a gun at her from the backyard of his home across the alley. The victim stated that, upon seeing Defendant with the gun, she ran back into her house and heard what she thought were three or four gun shots.

{4} Officer Eric Hiatt responded to the call and took the victim's statement. He inspected the area of the alleged shooting but did not find any shell casings or damage to the victim's home or nearby residences. He also went to Defendant's home to question him about the alleged incident. Defendant informed the officer that he had gone outside that day to take out the garbage, that he did not have a gun, and that he did not shoot at anyone.

{5} Approximately five-and-a-half weeks later, on September 13, 2000, Richard Peralta, the father of the victim, contacted the Roswell Police Department for help in evicting his son, Jonathon. The affiant, Officer De Los Santos, responded to the call. Mr. Peralta informed the affiant that he wanted Jonathon to move out of the family home because of an ongoing feud between Jonathon and Defendant. Mr. Peralta stated that the conflict arose while Jonathon and Defendant were in jail together and persisted after their release. Mr. Peralta indicated that he had recently asked Jonathon to move out of the home to prevent another altercation with Defendant. Mr. Peralta told the affiant that he was afraid Defendant was going to shoot at his home and injure his grandchildren.

{6} The next day, the affiant interviewed the victim a second time about the events of August 8. She gave much the same information as before; however, this time she included additional details and a slightly different sequence of events. In her second interview, the victim added that she saw not only Defendant, but his girlfriend with him at the time of the shooting. In addition, she specifically recalled Defendant having pointed a chrome handgun at her. She also recalled that she froze when she saw the gun, heard approximately five shots, and then ran into the house. When asked how she knew Defendant, the victim responded that she knew Defendant had a problem with her brother.

{7} The affidavit was submitted to the magistrate six weeks and two days after the

reported brandishing and shooting incident. The affidavit sought permission to search Defendant's residence for "any handgun or any pieces of any handgun, any paperwork showing ownership of any handgun, any receipts for any handgun, [any] ammunition for any handgun, [any] carrying devices for any handgun, and cleaning supplies for any handgun." The magistrate found probable cause to issue the search warrant. Upon executing the warrant, the police seized the following items from Defendant's home: a .357 Ruger Blackhawk revolver, assorted ammunition, a gun-cleaning kit, a set of ear plugs, and a bag of marijuana. Because the gun had been reported stolen, Defendant was charged with one count of receiving stolen property, contrary to NMSA 1978, § 30–16–11 (1987).

{8} Defendant moved to suppress the evidence, arguing that the information in the affidavit was stale and that the search warrant was overly broad in its description of the property to be seized. At the suppression hearing, the parties stipulated that (1) the affidavit for the search warrant was based on a single, isolated incident; and (2) the only reason for the delay in obtaining the search warrant was that the police had more pressing cases to investigate. Because the parties agreed that the motion to suppress raised issues of law to be decided on the facts already in the record, no testimony was presented at the hearing. After hearing argument from counsel, the district court took the motion under advisement.

{9} The district court issued a letter ruling denying the motion to suppress. It determined that the description in the affidavit was sufficiently particular. It also concluded that the information in the affidavit was not stale. Specifically, the district court noted that it was reasonable to infer that a person would hold onto a gun for use at a later time. Relying on both New Mexico law and cases from other jurisdictions, the district court concluded that the six-week delay in this case did not render the search warrant stale.

{10} After entry of an order denying the motion to suppress, Defendant entered a plea of no contest to the offense of receiving stolen property, reserving the right to appeal the denial of the motion to suppress. The

judgment and sentence was entered on April 12, 2001, and this appeal followed.

*Standard of Review*

{11} We first review the standards applicable to search warrants in New Mexico. A search warrant may not issue unless sufficient facts are presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists. Rule 5–211(A), (E) NMRA 2002; *State v. Lujan,* 1998–NMCA–032, ¶ 3, 124 N.M. 494, 953 P.2d 29. Probable cause to issue the warrant requires a factual showing that, at the time of the application for the warrant, evidence relating to the commission of a crime exists on the premises sought to be searched. *State v. Sansom,* 112 N.M. 679, 681, 818 P.2d 880, 882 (Ct.App.1991); *State v. Donaldson,* 100 N.M. 111, 115, 666 P.2d 1258, 1262 (Ct. App.1983). Thus, information which is "stale" will not support a finding of probable cause.

{12} The degree of proof necessary to establish probable cause for the issuance of a search warrant "is more than a suspicion or possibility but less than a certainty of proof." *Donaldson,* 100 N.M. at 116, 666 P.2d at 1263. Thus, the magistrate must have sufficient facts upon which to conclude that there is a reasonable probability that evidence of a crime will be found in the place to be searched. *State v. Garcia,* 79 N.M. 367, 368, 443 P.2d 860, 861 (1968) (stating that probable cause determination involves consideration of "reasonable probabilities"); *State v. Knight,* 2000–NMCA–016, ¶ 20, 128 N.M. 591, 995 P.2d 1033 (explaining that in determining whether probable cause exists, "the court works in the realm of probabilities rather than in the realm of certainty"). The affidavit must be considered as a whole, and the magistrate may draw reasonable inferences from the facts and circumstances alleged in the affidavit. *See State v. Snedeker,* 99 N.M. 286, 290, 657 P.2d 613, 617 (1982); *Lujan,* 1998–NMCA–032, ¶ 11, 124 N.M. 494, 953 P.2d 29.

{13} In examining the sufficiency of an affidavit submitted to the magistrate, this

Court conducts the same review as the district court. *State v. Wisdom*, 110 N.M. 772, 775, 800 P.2d 206, 209 (Ct.App.1990), *overruled on other grounds by State v. Barker*, 114 N.M. 589, 594, 844 P.2d 839, 844 (Ct.App. 1992). We apply a de novo standard of review to the magistrate's legal conclusion that the affidavit for a search warrant is supported by probable cause. *State v. Whitley*, 1999–NMCA–155, ¶ 3, 128 N.M. 403, 993 P.2d 117; *State v. Steinzig*, 1999–NMCA–107, ¶ 15, 127 N.M. 752, 987 P.2d 409 (noting that legal sufficiency of the contents of an affidavit is a question of law we review de novo); *Wisdom*, 110 N.M. at 774, 800 P.2d at 208 (observing that "the ultimate question of whether the contents of the affidavit are sufficient is a conclusion of law"). In other words, we review de novo the magistrate's application of the law to the facts.

 {14} However, in our review, we give deference to the magistrate's reasonable factual inferences underlying the probable cause determination. *See Snedeker*, 99 N.M. at 290, 657 P.2d at 617 ("All direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, should be considered."); *Steinzig*, 1999–NMCA–107, ¶ 15, 127 N.M. 752, 987 P.2d 409 ("On appeal we review the evidence submitted in support of a search warrant in the light most favorable to the factual determination made by the issuing judge or magistrate below, resolve all conflicts in the evidence, and indulge all reasonable inferences in support of that judge."); *Sansom*, 112 N.M. at 682, 818 P.2d at 883 (noting that appellate court defers to magistrate's inferential chain unless quantum of evidence underlying the probable cause determination is insufficient as a matter of law); *Wisdom*, 110 N.M. at 774, 800 P.2d at 208 (stating that reviewing court must defer to factual determinations by magistrate). Thus, we do not reweigh the evidence or draw our own inferences in determining whether probable cause exists. If the inferences drawn by the magistrate logically and rationally flow from the facts set forth in the affidavit, we defer to those inferences, even when reasonable inferences to the contrary may be drawn. *See Steinzig*, 1999–NMCA–107, ¶ 15, 127 N.M. 752, 987 P.2d 409; *Bendorf v.*

*Volkswagenwerk Aktiengesellschaft*, 90 N.M. 414, 419, 564 P.2d 619, 624 (Ct.App.1977) (explaining that a reasonable inference is a rational and logical deduction from established facts, viewed in light of common experience). Finally, we consider the affidavit as a whole, interpreting the affidavit in a common-sense, rather than technical, manner. *Knight*, 2000–NMCA–016, ¶ 14, 128 N.M. 591, 995 P.2d 1033; *Whitley*, 1999–NMCA– 155, ¶ 3, 128 N.M. 403, 993 P.2d 117.

*Stipulations of Fact*

{15} At the suppression hearing, the district court accepted two stipulations of fact made by the parties. The parties first stipulated that the application for the search warrant was based on a single, isolated incident, and not ongoing criminal activity. The parties next stipulated that the reason for the delay in obtaining the search warrant was that the police had other more pressing cases to investigate.

{16} It does not appear from the record that either stipulated fact was presented to the magistrate. Although the affidavit contains facts from which a magistrate could reasonably infer that there was no ongoing criminal activity, that inference was not necessarily drawn by the magistrate and was in the sole province of the magistrate to make. Moreover, the affidavit does not contain any facts whatsoever concerning the reason for the police delay in obtaining the search warrant.

 {17} "In carrying out our review of the validity of the affidavit for the issuance of the search warrant, we consider only the content of the sworn affidavit submitted to the issuing magistrate judge." *In re Shon Daniel K.*, 1998–NMCA–069, ¶ 8, 125 N.M. 219, 959 P.2d 553; *see also* Rule 5–211(B), (E) (providing that search warrants are to be issued on the basis of sworn written statements establishing probable cause); *Steinzig*, 1999–NMCA–107, ¶ 33, 127 N.M. 752, 987 P.2d 409 (stating that reviewing court considers only information contained within four corners of affidavit). Thus, because the stipulations made at the suppression hearing were not matters before the issuing magis-

trate, this Court is not bound by them and will conduct its review based solely on the information contained in the affidavit. *Cf. State v. Garcia*, 2002–NMCA–050, ¶ 8, 132 N.M. 180, 45 P.3d 900 (noting that it was improper for district court to consider and issue findings on evidence not actually presented to magistrate and limiting review to facts set forth in search warrant affidavits).

*Staleness*

■■■ {18} Defendant argues that the information in the search warrant affidavit was stale because it was based on the report of a single, isolated incident occurring more than six weeks before the issuance of the warrant. Defendant does not question that probable cause existed at the time of the incident. He contends that without evidence of ongoing criminal activity or corroboration by police investigation, probable cause diminished quickly with the passage of time and completely eroded after six weeks.

■■■ {19} In *Whitley*, 1999–NMCA–155, ¶ 8, 128 N.M. 403, 993 P.2d 117, this Court framed the analysis to be applied in staleness cases. "[S]taleness involves a variety of considerations, including not only time, but also the character of the crime and the extent of prior activity, the consumable or transferable nature of the items to be seized, the information known about the suspect and his or her habits, and the location to be searched." *Id.* Indeed, time is an important factor in determining whether information is stale. *Id.* However, it is not necessarily the controlling factor. *Id.; see generally* 2 Wayne R. LaFave, *Search and Seizure* § 3.7(a), at 341 (3d ed.1996). We do not apply a fixed formula in determining staleness. *Whitley*, 1999–NMCA–155, ¶ 8, 128 N.M. 403, 993 P.2d 117. Rather, staleness depends upon an evaluation of the particular facts of each case in light of the factors stated in *Whitley*. *See id.*

{20} Defendant argues that the passage of six weeks and two days, coupled with the lack of ongoing criminal activity, rendered the search warrant stale in this case. He asserts that because probable cause diminishes over time, the continuity of the offense is the key and primary factor in determining

whether information in a search warrant is valid or stale. *See* 2 LaFave, *supra*, § 3.7(a), at 342 (" 'Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time.' " (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972))); *People v. McCoy*, 135 Ill.App.3d 1059, 90 Ill.Dec. 493, 482 N.E.2d 200, 206 (Ill.App.Ct.1985) (stating that "the continuity of the offense [is] the single most important factor in the determination of whether the probable cause is valid or stale"). Defendant argues that, in *Whitley*, this Court formally adopted the view that the ongoing nature of the criminal activity is the single most important factor in the staleness analysis. *See Whitley*, 1999–NMCA–155, ¶ 9, 128 N.M. 403, 993 P.2d 117 ("The greater the uncertainty, the more the probable cause equation requires continuing activity because it is the ongoing nature of the reported illegal activity that allows the inference that the activity is continuing and that the evidence will still exist.").

{21} In *Whitley*, we determined that the lack of continuing activity was fatal because factors, besides time, created a high degree of uncertainty regarding whether the evidence sought would still be found in the place to be searched. *Id.* The case involved the sale of marijuana in a motel room within the past forty-eight hours. *Id.* ¶ 2. The evidence sought was marijuana, a highly consumable item. *Id.* ¶ 9. The place to be searched was a motel room, which because of its transient nature, meant that it was improbable that the drugs would still be in the room after forty-eight hours. *Id.* Due to the great uncertainty presented by all these factors, we concluded that the affidavit was insufficient to provide probable cause, absent additional information from which the issuing judge could reasonably infer continuing drug activity. *Id.* ¶ 10.

{22} Although *Whitley* established a framework for analyzing staleness, *id.* ¶ 8, the analysis in each case will necessarily depend upon the weight given the unique facts and circumstances of each case. *See also United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir.1995) (stating that "staleness is

evaluated in light of the particular facts of the case and the nature of the criminal activity and [the] property sought") (internal quotation marks and citation omitted); *Simmons v. State*, 899 P.2d 931, 934 (Alaska Ct.App. 1995) (recognizing that staleness "is determined by a flexible test, ... one that takes into account not just the raw passage of time but the totality of the circumstances of each case"); *Commonwealth v. Klimkowicz*, 331 Pa.Super. 75, 479 A.2d 1086, 1089 (1984) ("The validity of any search warrant must be determined on a case-by-case basis considering the unique circumstances of each case."). Using the language of *Whitley*, Defendant proposes a staleness calculus under which courts would heavily and independently weigh whether there is ongoing activity in any case involving a time-gap between the events set out in the affidavit and the issuance of the warrant. Such a formula would run counter to the flexible, case-by-case approach outlined in *Whitley*. *Whitley*, 1999–NMCA–155, ¶ 8, 128 N.M. 403, 993 P.2d 117. It would also contradict our standard of review, which requires a common-sense reading of the affidavit as a whole. *Id.* ¶ 3.

{23} The State argues that because this case is factually similar to *State v. Pargas*, 1997–NMCA–110, 124 N.M. 249, 948 P.2d 267, the analysis of that case applies to this case. *Pargas* also involved an alleged shooting incident. *Id.* ¶ 2. Similar to this case, the police questioned the defendant before obtaining the search warrant, and the defendant denied possessing or firing a gun at the victims. *Id.* ¶ 3. The warrant sought to search the defendant's home for handguns, ammunition, receipts, and sunglasses eleven days after the alleged shooting. *Id.* ¶ 5.

{24} The defendant in *Pargas* also relied on a case involving drugs, *State v. Lovato*, 118 N.M. 155, 157, 879 P.2d 787, 789 (Ct.App. 1994), to argue that "proof of ongoing or continuous activity is necessary to establish probable cause when there is a gap of time between the commission of a crime and the issuance of a search warrant." *Pargas*, 1997–NMCA–110, ¶ 20, 124 N.M. 249, 948 P.2d 267. We expressly rejected the argument, distinguishing guns from drugs, and concluding that it is reasonable to infer that the defendant would hold onto a gun for use at a later time. *Id.* ¶ 22; *see also United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991) (noting that guns, "unlike drugs, are durable goods useful to their owners for long periods of time"); *McDade v. State*, 175 Ga. App. 204, 332 S.E.2d 672, 675 (1985) ("Firearms are not the type of items that are disposed of after use, as would be the case with drugs or other disposable items."); 2 LaFave, *supra*, § 3.7(a), at 350 (explaining that guns are not likely to be consumed or destroyed, thus distinguishing cases involving the one-time observation of drugs or liquor).

{25} We concluded in *Pargas* that it was not unreasonable to infer that the defendant would have kept the gun at his residence because guns are not inherently incriminating and are often stored at home. *Pargas*, 1997–NMCA–110, ¶ 15, 124 N.M. 249, 948 P.2d 267; *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir.1975) (recognizing that "people who own pistols generally keep them at home or on their persons"); *United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.1975) (concluding that it was reasonable to assume that individuals keep weapons in their homes); *accord Collins*, 61 F.3d at 1384; *see also State v. Rubio*, 2002–NMCA–007, ¶ 8, 131 N.M. 479, 39 P.3d 144 (noting that because a residence does not have the same transitory nature as a motel room, the probability that the evidence sought will still be there is greater).

{26} We observed in *Pargas* that although an argument could be made that the defendant would have disposed of the gun after being questioned by police, the magistrate could reasonably conclude that the defendant would still have the gun because he could have assumed that his denial dispelled any suspicion that he was the perpetrator. *Pargas*, 1997–NMCA–110, ¶ 17, 124 N.M. 249, 948 P.2d 267. The defendant also could have believed that there was no physical evidence linking him to the crime. *Id.* Thus, we held in *Pargas* that the warrant to search defendant's home for a gun eleven days after the alleged crime was not stale. *Id.* ¶¶ 21–23.

{27} Applying the principles of *Pargas* to this case, the magistrate could reasonably have believed that Defendant would not dis-

pose of the gun after the reported incident. Significantly, the affidavit established a nexus between Defendant's home and the gun. It stated that Defendant was reportedly brandishing his gun at the victim and firing shots in the backyard of his home. According to the affidavit, Defendant was known to be living at his home, the place to be searched. Under the analysis in *Pargas*, with the nature of this crime in which Defendant used the gun at his home, the magistrate could have inferred that Defendant kept the gun at his home for his personal use and would continue to keep it there for some period after the incident. *See Klimkowicz*, 479 A.2d at 1089 (noting that in determining staleness, court considers, among other factors, the nature of the items and their intended purpose). Although Defendant was aware of the police investigation, he could have assumed that any suspicion surrounding him was allayed by his denial of the accusations and the absence of any physical evidence linking him to the crime. *Pargas*, 1997–NMCA–110, ¶ 17, 124 N.M. 249, 948 P.2d 267.

■ {28} However, *Pargas* does not resolve this case. In *Pargas*, the period of time between incident and warrant was eleven days as opposed to forty-four days in this case. With this time difference, the absence of evidence of continued criminal activity, corroboration that the gun remained at Defendant's home, or indication that the gun was kept at the home, could make the information concerning the incident in this case stale. *See McDade*, 332 S.E.2d at 675 (noting that gun rack indicates continued presence). Therefore, we look to whether there are additional facts that are relevant to the probable cause determination. *See Steinzig*, 1999–NMCA–107, ¶ 33, 127 N.M. 752, 987 P.2d 409 ("The time factor is important if its passage makes it unlikely that the object sought will be in the place where it was previously observed."); 2 LaFave, *supra*, § 3.7(a), at 348 (stating that when the crime is not a continuing offense, "the factor which is likely to emerge as the most important consideration is the nature of the property which is sought"). Although it is generally true that probable cause diminishes with time, even with an item such as a gun, the

passage of time must be evaluated in light of all of the other facts contained in the affidavit.

{29} Significantly, in this case, the affidavit indicates that the police obtained vital additional information concerning Defendant approximately one week before the warrant was obtained. The police learned from the victim and her father that there had been an ongoing dispute between Defendant and the victim's brother stemming from when they were incarcerated, and that the victim's father wanted to evict his son because he feared that Defendant was going to shoot at the family residence or injure his grandchildren. This information gave the police reason to believe that Defendant would hold onto the gun for future use. In conjunction with the other information in the affidavit, it could have been read by the magistrate to indicate that Defendant pointed the gun and shot at the victim as part of this continuing dispute with the victim's brother and that Defendant would keep the gun at his home to use again in connection with the ongoing dispute. *Steinzig*, 1999–NMCA–107, ¶ 15, 127 N.M. 752, 987 P.2d 409 (stating that appellate court views the facts in the light most favorable to the magistrate's determination and indulges all reasonable inferences in support of the magistrate); *cf. United States v. Vaandering*, 50 F.3d 696, 700 (9th Cir.1995) (concluding that old information was not stale when considered in light of other more recent information in the affidavit). Given that this ongoing dispute was continuing as late as one week before the issuance of the warrant, we do not believe forty-four days from the date of the shooting incident to be too long for the magistrate to reasonably conclude that there was probable cause to issue the search warrant, despite the lapse of time. *See Whitley*, 1999–NMCA–155, ¶ 8, 128 N.M. 403, 993 P.2d 117 (noting that information known about the suspect is one factor to consider in determining staleness); *Lujan*, 1998–NMCA–032, ¶ 6, 124 N.M. 494, 953 P.2d 29 (noting that reviewing court considers affidavit as a whole, giving it a common-sense reading). When we consider all the facts in the affidavit collectively and give deference to all the

magistrate's reasonable inferences, the affidavit was sufficient to establish probable cause to issue the search warrant.

{30} In his brief in chief, Defendant cites numerous out-of-state cases in which courts have allowed a long delay and not found staleness when there was some showing of ongoing criminal activity. *See, e.g., State v. Vargovich*, 113 Idaho 354, 743 P.2d 1007, 1010 (Ct.App.1987); *McCoy*, 90 Ill.Dec. 493, 482 N.E.2d at 206; *Peterson v. State*, 281 Md. 309, 379 A.2d 164, 170 (1977); *People v. McCants*, 59 A.D.2d 999, 399 N.Y.S.2d 715, 717 (N.Y.App.Div.1977); *People v. Burke*, 53 A.D.2d 802, 385 N.Y.S.2d 156, 158 (N.Y.App. Div.1976); *State v. Prince*, 52 Ohio Misc. 93, 369 N.E.2d 823, 826 (1977); *Commonwealth v. Nycz*, 274 Pa.Super. 305, 418 A.2d 418, 423 (1980). Defendant also cites cases from other jurisdictions in which courts have suppressed evidence when there was a delay in obtaining the search warrant and no evidence of continuing criminal activity. *See People v. Erthal*, 194 Colo. 147, 570 P.2d 534, 535 (1977) (en banc); *State v. Hoffman*, 15 Or. App. 524, 516 P.2d 84, 85–86 (1973). Finally, Defendant attempts to distinguish the out-of-state cases relied upon by the district court in its letter ruling. *See Collins*, 61 F.3d at 1384; *McDade*, 332 S.E.2d at 675; *State v. Hebert*, 697 So.2d 1040, 1048 (La.Ct.App. 1997); *State v. Marcotte*, 123 N.H. 245, 459 A.2d 278, 280 (1983); *Klimkowicz*, 479 A.2d at 1089. In light of our analysis above, we are not persuaded that the out-of-state authorities advanced by Defendant apply. Nor do we believe it necessary to specifically address the factual patterns of each of the cases relied upon by the district court in its letter ruling.

{31} Finally, Defendant argues that the police acted with unjustified delay when it was stipulated that the police ignored the case for six weeks because it had more pressing cases to investigate. As discussed above, this information was not contained within the affidavit and thus cannot be considered on appeal. *See In re Shon Daniel K.*, 1998–NMCA–069, ¶ 8, 125 N.M. 219, 959 P.2d 553. In any event, the reason for the delay in obtaining the warrant is irrelevant in this case because "it is reasonable to conclude that the police have other more urgent considerations to which to attend." *Pargas*, 1997–NMCA–110, ¶ 23, 124 N.M. 249, 948 P.2d 267; *see also* 2 LaFave, *supra*, § 3.7(a), at 354 (stating that "when a staleness issue is raised there is no need for the authorities to justify the delay or establish an absence of bad faith"). Moreover, the police acted within a reasonable time after receiving information concerning Defendant's ongoing dispute with the victim's brother, which gave rise to an inference that Defendant still had the gun at his home.

*Overbreadth*

■ {32} Defendant argues, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), that the search warrant was overly broad. The search warrant authorized a search of Defendant's home for "any handgun or any pieces of any handgun, any paperwork showing ownership of any handgun, any receipts for any handgun, [any] ammunition for any handgun, [any] carrying devices for any handgun, and cleaning supplies for any handgun." Defendant argues that the search warrant for "any handgun" was impermissibly broad when the victim reported seeing only a single chrome handgun.

■ {33} "The test for particularity is whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *State v. Patscheck*, 2000–NMCA–062, ¶ 8, 129 N.M. 296, 6 P.3d 498 (internal quotation marks and citation omitted). We recognize, however, "that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *State v. Jones*, 107 N.M. 503, 505, 760 P.2d 796, 798 (Ct.App.1988) (internal quotation marks and citation omitted).

{34} Based on the nature of the alleged offense and the information in the affidavit, the description in the search warrant was sufficiently particular. The affidavit recited

facts establishing probable cause to believe that Defendant had committed an offense involving a gun and that the gun might be found in his home. The victim gave two reports to the police: one that did not specifically describe the gun, and one that specifically described the gun as a "chrome handgun." The victim also reported hearing gunshots being fired. All the items sought were potentially connected to the instrumentality of the assault described in the affidavit. *Cf. Pargas*, 1997–NMCA–110, ¶ 12, 124 N.M. 249, 948 P.2d 267. The police were adequately guided in their search and reasonably knew what items were to be seized, including any "chrome handgun." *See Patscheck*, 2000–NMCA–062, ¶ 8, 129 N.M. 296, 6 P.3d 498. Thus, applying a common-sense reading to the affidavit, *Whitley*, 1999–NMCA–155, ¶ 3, 128 N.M. 403, 993 P.2d 117, the description in the warrant was not overly broad.

*Conclusion*

{35} We affirm the district court's denial of Defendant's motion to suppress.

{36} **IT IS SO ORDERED.**

LYNN PICKARD, Judge (specially concurring).

IRA ROBINSON, Judge (dissenting).

PICKARD, Judge (specially concurring).

{37} The majority opinion considers it significant that the events occurring during the week prior to the search provided additional reason to believe that the gun would still be located at Defendant's home. While I agree with that analysis, I do not believe that such facts were necessary to avoid a determination of staleness. As the Court indicated in *Pargas*, guns are durable goods that a magistrate might expect would still be useful to the owner a month or several months after a particular incident. There is nothing in this case to suggest that Defendant would have rid himself of the gun. Moreover, even without the information concerning the week prior to the search, there is everything to suggest that Defendant would still have it. Accordingly, I have signed the opinion and fully concur in it. I write separately to indicate that I would affirm even without these additional facts.

ROBINSON, Judge (dissenting).

{38} I respectfully dissent.

{39} Defendant's motion to suppress the fruits of the illegal search based upon an improper and invalid search warrant and affidavit should have been granted. I believe that the search warrant with accompanying affidavit was stale.

{40} I am persuaded by the fact that the investigating officer who was called to the scene on the date of the alleged aggravated assault—the alleged pointing of a gun at the victim and the shooting of it by Defendant—found no evidence of any shooting. He did not find any empty casings or bullet marks in any structures. He also found no neighbor or witness who had heard any shots. He found no evidence of a crime and did not arrest Defendant, issue a criminal complaint or seek the issuance of a search warrant.

{41} Six weeks later, the victim's father called the police and dealt with a different police officer. The victim's father told the new policeman that he wanted his son removed from his home because he was a "gangster" and allegedly, so was Defendant. The second policeman did not really learn anything further that would support or corroborate the probable cause determination. Nevertheless, he obtained a search warrant, after swearing out a Search Warrant Affidavit forty-four days after the alleged criminal activity took place. Under *Whitley*, 1999–NMCA–155, ¶ 8, the affidavit for the search warrant was stale. 2 LaFave, *supra*, § 3.7(a), at 342–343.

{42} Our rule for search warrants requires probable cause. Rule 5–211. Probable cause must be based upon substantial evidence both that the informant is credible and that there is a factual basis for allegations of wrongdoing. When the only basis for a warrant is hearsay from individuals like the victim, who are not law enforcement officers, the supporting affidavit should establish (1) the informant's veracity, (2) the informant's motive to lie, and (3) information that the allegations of criminality had been sufficient-

**168**

ly corroborated. *State v. Therrien,* 110 N.M. 261, 262–263, 794 P.2d 735, 736–37 (Ct.App. 1990), *overruled on other grounds by Barker,* 114 N.M. at 594, 844 P.2d at 844. The report of the first investigating officer, who interviewed both Defendant and the victim on the day of the original report six weeks prior to the search, found that *no* evidence corroborated the victim's complaint. Furthermore, the dispute between the family of the victim, who reported the shooting, and Defendant offered her a motive to lie and thus reduces her credibility as an informant. While we do not question whether there was probable cause to issue a warrant at the time of the alleged criminal activity, it is helpful to examine the strength of the evidence incorporated into the stale warrant.

{43} The majority finds support in *State v.Pargas,* 1997–NMCA–110, ¶¶ 21–23, 124 N.M. 249, 948 P.2d 267. I find that case distinguishable from ours. *Pargas* dealt with eleven-day-old information to support a warrant, not forty-four-day-old information. Furthermore, unlike *Pargas,* this case had an officer who unsuccessfully attempted to corroborate evidence of a crime initially. The time period between the information and the warrant was significantly shorter.

{44} The majority states "the police acted within a reasonable time after receiving information concerning Defendant's ongoing dispute with the victim's brother, which gave rise to an inference that Defendant still had the gun at his home." I do not agree with either the characterization of these facts or the inference drawn therefrom. While there may have been ongoing bad feelings between the victim's brother and Defendant, the victim's father did not claim that Defendant had committed any additional offenses against anyone in his family whatsoever, since the incident reported by the victim over forty days earlier.

{45} The question is whether it is likely that a person who has allegedly used a gun to shoot at someone or something will keep that gun in his house more than six weeks after the police investigate the alleged criminal activity. I think not. Without proof of ongoing criminal activity, probable cause di-

minishes over time. *Lovato,* 118 N.M. at 158, 879 P.2d at 790.

{46} We sometimes forget that the Fourth Amendment to the Constitution of the United States does not protect its citizens against *all* searches and seizures. It only protects us, as citizens of a free and independent nation, to be secure, especially in our homes, against *unreasonable* searches and seizures.

{47} This search and seizure was unreasonable. Therefore I dissent.