This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 29,953**

**JONATHAN ROBLES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Matthew G. Reynolds, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant appeals his conviction for possession of a controlled substance (crack cocaine). He entered a conditional no contest plea to the charge and reserved the right to appeal the denial of his motion to suppress and his motion for an order of protection requiring disclosure of the name of the confidential informant (CI) who supplied information to officers in support of the search warrant. After receiving a copy of the affidavit and search warrant, we proposed to affirm in a second notice of proposed summary disposition. Pursuant to an extension, Defendant has filed a timely second memorandum in opposition. Having considered the arguments raised by Defendant in his second memorandum and remaining unpersuaded, we affirm Defendant's conviction.

**Sufficiency of the Affidavit in Support of the Search Warrant**

Defendant challenges the legal sufficiency of the search warrant claiming that the affidavit was defective because it failed to properly specify the residence to be searched and it contained stale information. [2nd MIO 5-9]

A search warrant may be issued when "sufficient facts are presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists." *State v. Gonzales*, 2003-NMCA-008, ¶ 11, 133 N.M. 158, 61 P.3d 867 (filed 2002); *see also* Rule 5-211 NMRA. "Probable cause to issue the warrant requires a factual showing that, at the time of the

application for the warrant, evidence relating to the commission of a crime exists on the premises sought to be searched." *Gonzales*, 2003-NMCA-008, ¶ 11. The degree of proof required to establish probable cause to issue a search warrant is less than a certainty of proof but more than a suspicion or possibility. *Id.* ¶ 12. "Thus, the magistrate must have sufficient facts upon which to conclude that there is a reasonable probability that evidence of a crime will be found in the place to be searched." *Id.*

"In reviewing the sufficiency of an affidavit submitted in support of the issuance of a search warrant, we apply a de novo standard of review." *State v. Whitley*, 1999-NMCA-155, ¶ 3, 128 N.M. 403, 993 P.2d 117 (internal quotation marks and citation omitted). We review the affidavit by considering the affidavit as a whole and giving it a common-sense reading. *State v. Lujan*, 1998-NMCA-032, ¶ 6, 124 N.M. 494, 953 P.2d 29 (filed 1997). Moreover, we defer "to the magistrate's reasonable factual inferences underlying the probable cause determination." *Gonzales*, 2003-NMCA-008, ¶ 14.

The affidavit in support of the search warrant describes the location to be searched as follows:

> a blue/gray and white singlewide trailer located at 912 lot 3 RESERVOIR ST. There are neighbors to all sides of the residence. . . . The residence is a blue/gray and white singlewide trailer facing east and west. The main entrance to the residence is the front door, which is facing south. . . . The residence has a back entrance and is located facing to the north.

[SRP 1]

In support of the warrant, the affiant, Sergeant Garcia, states that:

The past several months [I] ha[ve] had information from confidential source that [Defendant's] residence located at 912 lot 3 Reservoir St. has been selling a controlled substance from the residence. . . . I was advised through a confidential source [Defendant] sells Methamphetamine, Cocaine and Crack Cocaine. . . . I have used this informant[s] in the past and he/she has proven himself/herself to be a reliable person.

[SRP 2] Garcia also notes that while doing surveillance of the residence, he observed "a lot of traffic" and people entering and leaving the residence at all hours, and he learned that Defendant "sells drugs along with several other individuals who stay with [Defendant] on and off [including] Nicholas Hidalgo." [SRP 2]

Garcia then outlines two controlled purchases. As to the first, Garcia states:

On or between 02-05-08 and 02-07-08 I met with an informant and gave him/her an undisclosed amount of . . . buy money. I checked the informant[']s person and vehicle prior to the purchase and he/she had nothing out of the ordinary. This informant[] has supplied me with information in the past that has been truthful and reliable. The informant told me he/she could purchase crack cocaine from [Defendant]. I followed the informant to a blue/gray in color mobile house located on Reservoir St. I watched as the informant pulled up to the residence and [Defendant] exited the mobile home and met with the informant for approx. 10 seconds. . . . I watched as the informant left the residence and I followed the informant to a prearranged location. The informant handed me [materials that tested as crack cocaine]. I search[ed] the informant again and I did not locate anything on the informant.

[SRP 2] As to the second purchase, Garcia states:

4

On or between 03-24-08 and 03-26-08, Officer Fernandez and I met with confidential informant[] who was willing to purchase narcotics. . . . The informant advised us he/she could make a controlled narcotic buy of Methamphetamine/cocaine from [Defendant] or Nicholas Hidalgo, who lived at 623 Reservoir St. We searched the informant's person and vehicle and we did not locate anything out of the ordinary on the informant[s] person or . . . in his vehicle. I handed the informant an undisclosed amount of . . . funds. We followed the informant to 612 Lot 3 Reservoir St. Officer Fernandez and I watched the informant arrive at the residence and walk to the front door and enter in the residence. The informant exited after a short time and left the area. Officer Fernandez and I followed the informant to a prearranged location. . . . [T]he informant handed us an undisclosed amount of cocaine and stated he had got the cocaine from Nicholas Hidalgo who has been staying with [Defendant] at his residence. I searched the informant's person and vehicle and not finding anything[,] the informant to leave [sic] the area.

[SRP 2-3]

The warrant is dated March 27, 2008, and it names Defendant and Nicholas Hidalgo as possible suspects and states the address as 912 Lot 3 Reservoir St. [SRP 4]

**Staleness**

Defendant claims that the affidavit was based on stale information that failed to provide substantial evidence that evidence of any crime would be found at Defendant's residence because: (1) the first controlled buy occurred over a month and a half prior to the issuance of the search warrant; and (2) the second buy, while occurring just one to three days before issuance of the warrant, indicates the purchase was made from Hildago, not Defendant and contains typographical errors as to the correct address. [2nd MIO 5-6] We disagree.

5

As more fully discussed in our second notice of proposed summary disposition, staleness involves a variety of considerations including timeliness, the character of the crime, the consumable or transferable nature of the items to be seized, and the information known about the location to be searched. *See Whitley*, 1999-NMCA-155, ¶ 8. A determination of staleness is made by "reviewing the content of the affidavit for [the] search warrant and applying a common-sense reading." *State v. Steinzig*, 1999-NMCA-107, ¶ 33, 127 N.M. 752, 987 P.2d 409.

In light of the fact that there were two controlled purchases at Defendant's residence within a six-week period, we proposed to hold that the magistrate could reasonably conclude that the crime was ongoing. *See id.* ¶¶ 33-34; *State v. Pargas*, 1997-NMCA-110, ¶¶ 20-22, 124 N.M. 249, 948 P.2d 267. Moreover, because a residence does not have the same transitory nature as a hotel room, we opined that the probability that the drugs would continue to be at Defendant's residence over a period of time is greater. *See State v. Rubio*, 2002-NMCA-007, ¶ 8, 131 N.M. 479, 39 P.3d 144 (filed 2001) (recognizing that "a residence does not have the same transitory nature" as a motel room, and thus there was a greater probability that cocaine would continue to be in the residence after a forty-eight hour period). Finally, we were not convinced that the fact that Nicholas Hidalgo was the seller during the second controlled purchase warranted a conclusion that the drugs would no longer be found

6

at Defendant's residence given that the search warrant and affidavit clearly state in multiple places that Nicholas Hidalgo lived with Defendant. [SRP 1-4]

In his second memorandum in opposition, Defendant notes that the affidavit only states that Hildago "stays with" Defendant, not that he resides there. [2nd MIO 7] We do not believe this negates our proposed disposition which is based on the fact that Hildago was often found at Defendant's residence. Contrary to Defendant's contention, there is nothing in the language of the affidavit suggesting that Hildago only stayed at Defendant's residence "for a few days." [2nd MIO 7] To the contrary, based upon the language in the affidavit that certain persons "stay with [Defendant] on and off [including] Nicholas Hildago," and the phrase identifying Hildago as someone "who has been staying with [Defendant] at his residence," the issuing judge could conclude that Hildago is often found at Defendant's residence and that the second controlled buy occurred at Defendant's residence while Hidalgo was there. [SRP 2-3]

In his second memorandum in opposition, Defendant again notes that the affidavit states that the second buy occurred at 623 Reservoir Street. [2nd MIO 6] In our previous notice, we observed that the information as to the second controlled purchase appears to include a hand-written correction in the latter portion changing the address to "912 Reservoir St." [SRP 3] In his second memorandum in opposition,

Defendant states that the handwritten correction was a notation by defense counsel. [2nd MIO 6] He then argues that, given that the typographical error was not corrected, the issuing judge had less of a basis to believe there was continuing drug activity at Defendant's residence. [2nd MIO 6] We remain unconvinced.

As previously stated, the affidavit makes it clear that Hidalgo stayed with Defendant at his residence. [SRP 1-4] We are not convinced that the failure to make a handwritten correction on the affidavit negates our proposed disposition that the court could find the mistaken address to be a typographical error. [RP 110, 122] *Cf. State v. Chandler*, 119 N.M. 727, 734, 895 P.2d 249, 256 (Ct. App. 1995) (observing that "an affidavit supporting a search warrant is not defective due to a typographical error in the date of the alleged criminal activity where the typographical error is obvious").

Furthermore, we note that Defendant continues to rely mostly on this Court's opinion in *Whitley* in support of his contention that the affidavit was stale and insufficient to support issuance of the search warrant. [2nd MIO 7-9] However, as discussed in our previous notice, the warrant at issue in *Whitley* related to a hotel room, and a residence such as Defendant's is much less transient. *Compare Whitley*, 1999-NMCA-155, ¶¶ 9-10 (holding that information supporting a search warrant for marijuana in a motel room was stale when it was at least forty-eight hours old); *and*

*State v. Lovato*, 118 N.M. 155, 157-58, 879 P.2d 787, 790-91 (Ct. App. 1994) (holding that information regarding one controlled purchase at a hotel room seventy-two hours before the affidavit issued was stale), *with Steinzig*, 1999-NMCA-107, ¶¶ 33-34 (holding that three-week-old information was not stale when the items to be seized were computers and the place to be searched was the suspect's residence); *and Pargas*, 1997-NMCA-110, ¶¶ 20-22 (holding that eleven-day-old information supporting a warrant was not stale when the items to be seized were handguns or indicia of handgun ownership and the place to be searched was a suspect's residence).

For the foregoing reasons and those set forth in greater detail in our second notice of proposed disposition, the affidavit in support of the search warrant was not defective due to staleness and it was sufficiently detailed to allow the issuing court to reasonably infer that continuing drug activity was occurring at Defendant's residence.

**CI's Knowledge and Credibility**

Defendant claims that the affidavit fails to meet the two-prong test set forth in *State v. Cordova*, 109 N.M. 211, 213, 784 P.2d 30, 32 (1989), because it fails to establish a substantial basis for the CI's knowledge (credibility prong) or a substantial basis for concluding that the CI was truthful or reliable (veracity prong). [2nd MIO 9-11] He claims that there is no evidence that the CI actually observed drugs in Defendant's home nor any basis for concluding that the information furnished by the

CI had factual support. [2nd MIO 10] He further claims that the affidavit fails to establish that the CI is credible. [2nd MIO 10-11]

In our second notice, we proposed to disagree. We proposed to hold that the basis of knowledge requirement was satisfied by the CI's participation in a drug transaction with Defendant, at Defendant's home. *See Whitley*, 1999-NMCA-155, ¶ 4 (holding that the basis of knowledge requirement was met where the informant was in the motel room which was the subject of the search warrant, and where the informant personally observed the defendant selling marijuana). Furthermore, we proposed to hold that the CI's reliability and veracity were established through his/her historical reliability and by Garcia's independent corroboration. *See generally Steinzig*, 1999-NMCA-107, ¶¶ 18, 21-23 (stating that an informant's reliability may be established by showing that the informant has previously given police officers reliable information and the informant's credibility may be corroborated by the officers' investigation and observation); *State v. Knight*, 2000-NMCA-016, ¶ 20, 128 N.M. 591, 995 P.2d 1033 (enumerating ways in which reliability of an informant may generally be established, including past performance and independent corroboration)..

In his second memorandum in opposition, Defendant contends that the CI's information was not corroborated because the alleged corroborating information was stale and had nothing to do with Defendant. [MIO 11] We are unpersuaded.

As discussed in our analysis of Defendant's staleness claims, the affidavit establishes that the CI was searched before and after controlled purchases that occurred six weeks, and one to three days, prior to the issuance of the search warrant. [SRP 2-3] Furthermore, the affidavit states that officers never lost sight of the CI during the controlled buys except when the CI was inside Defendant's residence conducting the transaction. [SRP 2-3]

These facts are sufficient to establish independent corroboration of the CI's representation that Defendant was selling drugs from his residence and that he could purchase drugs from Defendant. [SRP 2-3] *See Knight*, 2000-NMCA-16, ¶¶ 20-23 (stating the independent investigation and corroboration of an informant's information help to establish the veracity and reliability of that information).

**Motion to Reveal the CI's Identity**

Defendant contends that the district court erred in refusing to order the production of the name of the CI who supplied the information contained in the affidavit so that the CI could be interviewed to determine the basis of his knowledge and his veracity. [2nd MIO 11-13] *See Cordova*, 109 N.M. at 214, 784 P.2d at 33. He claims that he had a right to interview the CI pursuant to Rule 11-510(C)(2) NMRA, which applies when evidence indicates that an informer may be able to give testimony that is relevant and helpful to the defense. [2nd MIO 12] In our second

notice, we proposed to affirm because it did not appear that Defendant made any kind of showing that the CI would be able to give relevant or helpful testimony. [RP 69, 91, 101-104] *See State v. Rojo*, 1999-NMSC-001, ¶ 40, 126 N.M. 438, 971 P.2d 829 (filed 1998) (holding that the district court did not err in refusing to require the disclosure of the CI's identity because the defendant failed to show the CI's testimony was "relevant or helpful to the defense, or necessary to the fair determination of Defendant's guilt or innocence").

In his second memorandum in opposition, Defendant claims that we failed to address his argument that he needed to interview the CI in order to determine whether the State complied with the *Aguilar-Spinelli* analysis adopted in *Cordova* which requires a showing of the CI's credibility and veracity. [2nd MIO 12-13] We disagree. Defendant has failed to offer a meaningful challenge to our analysis or conclusions. [2nd MIO 12-13] Therefore, we remain convinced that Defendant has failed to establish a question as to the CI's reliability or credibility because the affidavit itself establishes the CI's basis of knowledge and the CI's reliability or veracity. *See Lujan*, 1998-NMCA-032, ¶ 10 (stating that the controlled buy addresses the informant's basis of knowledge and credibility and "thereby addresses both prongs of the *Cordova* (*Aguilar-Spinelli*) test").

For the reasons set forth above as well as those set forth in our first and second notices of proposed summary disposition, we affirm Defendant's conviction and the denial of his motion to suppress and motion for an order of production.

**IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

**JONATHAN B. SUTIN, Judge**

**RODERICK T. KENNEDY, Judge**