1998-NMCA-069

959 P.2d 553

**In re SHON DANIEL K., a Child.**

**No. 18626.**

Court of Appeals of New Mexico.

March 30, 1998.

Certiorari Denied May 11, 1998.

Tom Udall, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for Petitioner–Appellant.

Eric D. Dixon, Attorney and Counselor at Law, P.A., Portales, for Respondent–Appellee.

## OPINION

DONNELLY, Judge.

{1}   The State appeals from an order of the children's court suppressing evidence obtained pursuant to a search warrant issued by a magistrate judge to search a residence occupied by the Child.  The dispositive question presented on appeal is whether the affidavit tendered in support of the search warrant was sufficient to provide a basis for believing the information attributed to the unnamed informants mentioned in the affidavit was credible.  For the reasons discussed herein, we affirm.

*FACTS*

{2}   During the early morning hours of December 14, 1996, a burglary occurred at the Portales Country Club in Portales, New Mexico.  Among the items taken were thirty-nine bottles of liquor, a number of golf clubs, and a clock.  Most of the liquor bottles that were stolen bore "Crown Royal" brand labels.

{3}   On February 6, 1997, the Portales City Police Department was contacted by an individual who gave them a statement indicating that the informant had been contacted by a juvenile, Chris M., and that he had been offered alcoholic beverages, including some of the Crown Royal liquor bottles stolen from

222

the Portales Country Club. The police took a statement from a second informant the next day. Based on the investigation of the burglary, other information concerning the names of the individuals residing at the address in question and the statements from the two undisclosed informants, the police prepared an affidavit for a search warrant for the search of the residence located at 813 North Avenue N in Portales. The affidavit recited in part:

> On February 6, 1997, Officer Rudy Roybal took a recorded statement from a concerned citizen. The concerned citizen came forward of their [sic] own accord and did so without any promise of reward. The citizen was not working off any criminal charges or receive [sic] any preferential treatment for any pending cases. The citizen related that they [sic] had been contacted by Chris [M.] and offered alcoholic beverages. The citizen related that they [sic] were offered Crown Royal for $10.00 a bottle. The citizen related that the beverages were represented to have been stolen from the country club, by [Chris M.] and [Shon K.]. The citizen further related that on other occasions they had been at the above residence and been supplied with alcoholic beverages by [Chris M.] and [Shon K.].
>
> On February 7, 1997, Officer Roybal took a statement from another concerned citizen. This citizen also related that [Chris M.] had offered alcoholic beverages for sale. This citizen came forward of their [sic] own accord, without promise of reward or special consideration for any pending charges. This citizen related that within the last 48 hours they [sic] had been in the residence at 813 N. Ave. N. The citizen related that they [sic] had seen bottles of Crown Royal inside the residence. The citizen stated some of the bottles were half full and others appeared to be unopened. The citizen related that this residence is still occupied by Chris [M.], Shon [K.] and Chad [B.].

{4} The affidavit submitted in support of the search warrant also recited that on Octo-

ber 18, 1996, Portales police officers responded to a report of a fight at 831 North Avenue N in Portales; that Chris M., Shon K., and Chad B. lived at such residence; that several juveniles had been consuming alcoholic beverages at the residence; and that "[n]o one at the residence was of legal drinking age." After submitting the affidavit to a magistrate judge, the judge approved the issuance of a search warrant on February 7, 1997.

{5} The Child filed a motion to suppress the evidence seized as a result of the execution of the search warrant. Following a hearing on June 23, 1997, the children's court issued an order granting the motion to suppress. The order stated, in part, that "the affidavit for search warrant is defective [because] it fails to set forth both a substantial basis for believing the informant[s] and a substantial basis for concluding the informant[s] gathered the information of alleged illegal activities in a reliable fashion."

*DISCUSSION*

█ {6} Did the affidavit submitted in support of the search warrant, which was based primarily on information provided by undisclosed informants, set forth sufficient information from which the issuing magistrate judge could reasonably find the existence of probable cause for its issuance? More specifically, did the affidavit set forth sufficient facts to satisfy the two-pronged *Aguilar–Spinelli*[1] test articulated in *State v. Cordova,* 109 N.M. 211, 784 P.2d 30 (1989) and Rule 5–211(E) NMRA 1998, promulgated by the Supreme Court? We conclude that the children's court properly determined that the affidavit submitted in support of the issuance of the search warrant was insufficient to establish probable cause.

█ {7} The protections accorded under Article II, Section 10 of the New Mexico Constitution against unreasonable searches and seizures are more extensive than those provided under the Fourth Amendment to the United States Constitution. *See Campos v. State,* 117 N.M. 155, 158, 870 P.2d 117, 120 (1994) (state constitution imposes heightened probable cause requirement); *State v. Atta-*

1. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

*way,* 117 N.M. 141, 149–50, 870 P.2d 103, 111–12 (1994) (holding "knock and announce" requirement implicit in state constitutional search and seizure provision); *State v. Gutierrez,* 116 N.M. 431, 446–47, 863 P.2d 1052, 1067–68 (1993) (holding federal "good faith" exception incompatible with provisions of state constitution); *Cordova,* 109 N.M. at 217, 784 P.2d at 36 ("totality of circumstances" test for determining existence of probable cause for issuance of search warrant found to be incompatible with state constitutional safeguards).

■■■ {8}  In reviewing the sufficiency of an affidavit submitted in support of the issuance of a search warrant, we apply a de novo standard of review. *Attaway,* 117 N.M. at 145, 870 P.2d at 107; *see also State v. Wisdom,* 110 N.M. 772, 774, 800 P.2d 206, 208 (Ct.App.1990) ("[T]he ultimate question of whether the contents of the affidavit are sufficient is a conclusion of law."). In carrying out our review of the validity of the affidavit for the issuance of the search warrant, we consider only the content of the sworn affidavit submitted to the issuing magistrate judge. *State v. Hernandez,* 111 N.M. 226, 227, 804 P.2d 417, 418 (Ct.App.1990). We are mindful of the admonitions that a reviewing court should not impose technical requirements on an affidavit nor insist on elaborate specificity, but instead we should apply a common-sense reading of the affidavit, while bearing in mind that such affidavits are generally prepared by police officers who are not lawyers. *State v. Donaldson,* 100 N.M. 111, 116, 666 P.2d 1258, 1263 (Ct.App. 1983); *see also State v. Snedeker,* 99 N.M. 286, 290, 657 P.2d 613, 617 (1982) (disapproving a " 'grudging or negative attitude by reviewing courts toward warrants [that would] tend to discourage police officers from submitting their evidence to a judicial officer before acting' " (quoting *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965))).

■■■ {9}  Although reviewing courts do not apply elaborate or overly technical requirements in evaluating the sufficiency of affidavits, nevertheless, decisions of our Supreme Court make clear that applications for search warrants must set forth sufficient fac-

tual detail to enable an issuing magistrate judge to make an independent determination of the existence of probable cause prior to the issuance of a search warrant. *See Cordova,* 109 N.M. at 213, 784 P.2d at 32; *Snedeker,* 99 N.M. at 290, 657 P.2d at 617; *see also* Rule 5–211(E). In exercising this independent evaluation, the magistrate judge cannot rely on mere conclusory statements contained in the affidavit; instead, he or she must be provided with sufficient information to permit the court to evaluate (1) the basis for the affiant's and any informant's knowledge indicating the information relied upon was gathered in a reliable way; and (2) facts indicating that the informant or informants are credible or the information in the affidavit is accurate and worthy of belief. *Cordova,* 109 N.M. at 213, 784 P.2d at 32; *see also State v. Pargas,* 1997–NMCA–110, ¶ 7, 124 N.M. 249, 948 P.2d 267.

{10}  The Child argues that the children's court correctly determined that the affidavit for the issuance of the search warrant did not set forth sufficient facts to satisfy the second requirement of the *Aguilar–Spinelli* test adopted by our Supreme Court in *Cordova* and by Rule 5–211(E). Rule 5–211(E), promulgated by our Supreme Court, provides, in pertinent part:

> As used in this rule, "probable cause" shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.

■■ {11}  The informants relied upon in the affidavit in question are unnamed. Although it may be inferred that the police knew their identities, the affidavit is silent as to the reason for their nondisclosure. As observed in *Wisdom,* 110 N.M. at 776, 800 P.2d at 210, while it is true that an affidavit may be based wholly or in part on hearsay from an unnamed informant, when the informant is not identified, the affidavit must set forth sufficient information from which the court can reasonably determine that the facts were as the informant 'has asserted and that the information provided by the informant's statements is reliable. *See also* Rule 5–

211(E); *State v. Turkal,* 93 N.M. 248, 250, 599 P.2d 1045, 1047 (1979) (uncorroborated information supplied by an unidentified "concerned juvenile citizen" in an affidavit for issuance of a search warrant may be reliable if the information is otherwise corroborated); *State v. Utterback,* 240 Neb. 981, 485 N.W.2d 760, 768 (1992) (enumerating ways in which reliability of an informant may generally be established).

■ {12} Reliability of an informant may be established, among other ways, by showing that: (1) the informant has given reliable information to police officers in the past, *State v. Cervantes,* 92 N.M. 643, 647, 593 P.2d 478, 482 (Ct.App.1979); (2) the informant is a volunteer citizen-informant, *Hernandez,* 111 N.M. at 228, 804 P.2d at 419; *State v. Therrien,* 110 N.M. 261, 263–64, 794 P.2d 735, 737–38 (Ct.App.1990), *overruled on other grounds by State v. Barker,* 114 N.M. 589, 593, 844 P.2d 839, 843 (Ct.App.1992); (3) the informant has made statements against his or her penal interest, *Cordova,* 109 N.M. at 218, 784 P.2d at 37; (4) independent investigation by police corroborates informant's reliability or information given; and (5) facts and circumstances disclosed impute reliability, *Snedeker,* 99 N.M. at 290, 657 P.2d at 617.

■ {13} Seeking to counter the assertions of the Child that the affidavit lacked sufficient information to establish the veracity and basis of knowledge requirements recognized in *Cordova,* the State emphasizes that the informants referred to in the affidavit were described as "concerned citizens" and, thus, were presumed to be reliable and credible. Although the State is correct that information provided by a citizen-informant who has been identified generally carries with it a presumption of reliability, *Therrien,* 110 N.M. at 263, 794 P.2d at 737, any such presumption may vanish when the individual referred to in the affidavit is undisclosed, when no explanation is given for the nondisclosure, and the affidavit is silent as to other facts corroborative of the informant's status. *Id.* at 263–64, 794 P.2d at 737–38. An affidavit which merely sets forth a generic recitation that an individual is a "citizen-informant" is insufficient to raise an inference that the informant is credible. *See State v.*

*Duran,* 90 N.M. 741, 743, 568 P.2d 267, 269 (Ct.App.1977) (conclusory statements contained in affidavit for search warrant held insufficient to establish probable cause, absent a factual predicate); *see also State v. Franklin,* 49 Wash.App. 106, 741 P.2d 83, 85–86 (1987) (if informant's tip is basis for search warrant, the affidavit in support of warrant must establish basis for the information and credibility of informant in order to properly evaluate existence of probable cause).

■ {14} The term "citizen-informant" is generally used to describe an individual who purports to be a victim of a crime or who was a witness to a criminal offense, and is motivated by good citizenship to openly assist the police in carrying out their duties of law enforcement. *Hernandez,* 111 N.M. at 228, 804 P.2d at 419. However, "[t]he status of a citizen[-]informant cannot [automatically be conferred] unless the affidavit used to obtain a search warrant affirmatively sets forth [facts or] circumstances from which the existence of the status can reasonably be" determined by an independent magistrate judge. *Utterback,* 485 N.W.2d at 768. In *State v. Barker,* 114 N.M. 589, 593, 844 P.2d 839, 843 (Ct.App.1992), this Court considered the sufficiency of an affidavit tendered in support of a search warrant, based in part upon information provided by an undisclosed informant, and found that the affidavit was insufficient to establish probable cause. The Court observed that the affidavit did not

contain any recitation of the surrounding circumstances of the informant's admissions, which would serve to show why they were trustworthy. For instance, it does not contain any specific or detailed facts surrounding the informant's admissions ... [and] the informant is not named. *See* 1 [Wayne R.] LaFave, [*Search and Seizure* ] § 3.3(c) at 647 [ (2d ed.1987) ] (if informant's name is not disclosed, this makes it much more likely that he is a "protected police stool-pigeon"); [*State v.]* *Mosley,* 412 So.2d [527,] 530 [ (La.1982) ] (disclosure of informant's identity can tend to establish a presumption of inherent credibility).

*Id.* at 593–94, 844 P.2d at 843–44 (citation omitted).

{15} In order to establish the reliability of a "citizen-informant," knowledge on the part of the police of the informant's identity is generally necessary, irrespective of whether the individual's identity is revealed in the affidavit in support of the search warrant. *State v. Dobyns*, 55 Wash. App. 609, 779 P.2d 746, 750–51 (1989). The State's burden of demonstrating the credibility of an individual described as a citizen-informant is greater, not lesser, when the individual's identity is not disclosed to the magistrate judge. *See State v. Ibarra*, 61 Wash.App. 695, 812 P.2d 114, 117 (1991). In such case the affidavit must contain sufficient additional information to show the informant is telling the truth. *Wisdom*, 110 N.M. at 774, 800 P.2d at 208.

{16} As pointed out by the author in 2 Wayne R. LaFave, *Search and Seizure* Section 3.4(a) (3d ed.1996), police claim that information obtained from an undisclosed or unnamed informant who is described as an "average citizen" or "citizen-informant" may be subject to question unless the affidavit sets forth sufficient facts to distinguish such person from a paid informant or one who provides information in order to avoid criminal prosecution. Statements contained in an affidavit tendered in support of the issuance of a search warrant concerning the status of "citizen-informants" may be viewed with "skepticism when the nature of the criminal conduct alleged and the relationship of the 'citizen' to that activity" may indicate the informant is possibly associated in some manner with the individuals informed against. *Id.* at 220–21, 223. As noted by LaFave, "it should not be deemed sufficient that the police have alleged in a rather conclusory fashion that [the undisclosed informant] was 'an individual who is neither a paid nor habitual informant,' 'a responsible citizen of utmost character and integrity' or 'a reputable member of the community.' " *Id.* at 222 (footnotes omitted).

{17} The State additionally asserts that the informants referred to in the affidavit satisfy the requirements of the veracity or credibility prong of *Aguilar–Spinelli* because they are also described as individuals who "came forward of their own accord . . . without any promise of reward," and who were not "working off any criminal charges" or receiving "any preferential treatment for any pending cases." The latter statements, however, are conclusory in nature and fail to provide the reasons for withholding the informants' names or specific facts tending to indicate that the information provided by the informants is trustworthy. Affidavits which rely principally upon conclusory statements fail to provide a sufficient factual basis from which a magistrate judge may perform his or her role as an independent, neutral arbiter of the existence of probable cause. *See Snedeker*, 99 N.M. at 290, 657 P.2d at 617 (credibility requirement enunciated in *Aguilar* was designed to prevent magistrates from becoming "rubber stamp" for law enforcement officers).

{18} The State's reliance upon statements in the affidavit that the informants "came forward of their own accord, without promise of reward or special consideration for any pending charges" omit any explanation of what steps were taken to verify such claims so that the magistrate judge could fairly evaluate these conclusionary assertions. Significantly, the statements that the information provided by the informants was given "without promise of reward or special consideration for any pending charges," do not negate the question of whether there were, in fact, any pending criminal charges against either or both of the informants, and what steps were taken to verify the status of the informants. Affidavits which purport to bolster the credibility of undisclosed informants, based largely upon conclusory statements supplied by an affiant, are insufficient to satisfy the credibility prong of the *Aguilar–Spinelli* test.

*CONCLUSION*

{19} In sum, the principal portion of the information relied upon in the affidavit submitted in support of the issuance of a search warrant is based upon information supplied by undisclosed or unidentified informants, and at the same time is devoid of sufficient other information or corroborative facts, non-conclusory in nature to permit a neutral mag-

istrate judge to independently determine that the information provided is credible and that it was collected in a reliable manner. Thus, we conclude that the children's court correctly found the affidavit insufficient to establish probable cause.

{20} The order of the children's court granting the motion to suppress is affirmed.

{21} IT IS SO ORDERED.

APODACA and BOSSON, JJ., concur.

1998-NMCA-068