This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                    **NO. 31,478**

**MADALENA GARCIA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

Guadalupe H. Preciado
Dane Eric Hannum
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

The State appeals an order granting Defendant's motion to suppress. We proposed to affirm in a notice of proposed summary disposition. Pursuant to an extension, the State filed a timely memorandum in opposition. After reviewing the State's memorandum in opposition, we remain unpersuaded by its arguments and thus affirm the district court's order granting the motion to suppress.

In our notice of proposed summary disposition, we observed that a search warrant may only issue upon a finding of probable cause. *See State v. Nyce*, 2006-NMSC-026, ¶ 9, 139 N.M. 647, 137 P.3d 587, *limited on other grounds by State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376; *see also* Rule 5-211 NMRA. We will uphold an issuing court's determination of probable cause "if the affidavit provides a substantial basis to support a finding of probable cause." *Williamson*, 2009-NMSC-039, ¶ 29. We do not substitute our judgment for "that [of] the reviewing court [but instead we] determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* In *Williamson*, our Supreme Court explained that "the substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30.

In its docketing statement, the State challenged the district court's finding that the affidavit did not provide sufficient information that narcotics would be found at Defendant's residence, 6219 Marigold Ct. NW (the "Residence") at the time the warrant issued, and the finding that the information provided by the confidential informant ("CI") as it pertains to the Residence was insufficiently corroborated by independent police officer investigation. [DS 7; RP 55-57, 85-86] *See generally State v. Whitley,* 1999-NMCA-155, ¶ 5, 128 N.M. 403, 993 P.2d 117 (recognizing that the affidavit must provide reasonable grounds to conclude "(1) that the items sought to be seized are evidence of a crime[,] and (2) that the criminal evidence sought is located at the place to be searched" (internal quotation marks and citation omitted))*, limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29.

We proposed to affirm. We noted that there is nothing in the affidavit indicating when the CI saw the narcotics at the Residence or whether the CI saw narcotics at the Residence more than once. [RP 55] Instead, the affidavit only indicates that the CI saw "a large quantity" of cocaine at the Residence at some unspecified point in the past, that the CI saw Defendant's spouse, Diego Garcia, with narcotics within the past thirty days at someone else's house, and that the CI saw Diego Garcia in possession of "trafficking amounts" of cocaine on more than one occasion within the past sixty days, but at an unspecified location. [RP 55]

Therefore, we concluded that there is no way to determine whether any of the "large quantity" of cocaine observed by the CI at a discrete point in the past remained in the Residence by the time the warrant issued. *See Whitley*, 1999-NMCA-155, ¶ 10 (holding that an affidavit that "report[ed] only one incident involving a highly consumable drug and fail[ed] to note any evidence of additional drug activity . . . did not provide the issuing court with probable cause to support the search warrant"); *cf. State v. Vest*, 2011-NMCA-037, ¶ 22, 149 N.M. 548, 252 P.3d 772, (holding that the affidavit failed to establish the requisite probable cause because "there was no timely corroboration of the informant's information [and] the affiant could not corroborate the reliability of the informant's report that [the d]efendant had present possession of marijuana"), *cert. granted,* 2011-NMCERT-005, ___ N.M. ___, ___ P.3d ___ .

In our notice, we also reviewed the remainder of the affidavit to determine if other information contained therein could contribute to a finding of the requisite probable cause. *See Williamson*, 2009-NMSC-039, ¶ 29 (noting that, on review we consider the affidavit as a whole). As to any corroboration provided by the concerned citizen informant ("CCI"), we observed that the affidavit only states that an unidentified CCI knew a "trustworthy individual" who told the CCI that drug trafficking took place at the Residence. [RP 57] We noted that there is nothing in the affidavit establishing the veracity of either the CCI or the trustworthy individual and

4

nothing to establish the basis of knowledge of the trustworthy individual. *See State v. Cordova*, 109 N.M. 211, 213, n.2, 784 P.2d 30, 32, n.2 (1989) (adopting the two-prong "*Aguilar-Spinelli* test" articulated by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), which requires the affidavit to include: (1) facts establishing an informant's "basis of knowledge" and (2) facts showing the informant's "veracity").

In its memorandum in opposition, the State challenges what it characterizes as our implicit holding that the information provided by the CI was stale. [MIO 5-14] It argues that any staleness was negated by information indicating that Diego Garcia was engaged in ongoing, repeated, criminal activity. [MIO 5-12] *See, e.g.*, *Whitley*, 1999-NMCA-155, ¶ 9 (recognizing that "it is the ongoing nature of the reported illegal activity that allows the inference that the activity is continuing and that the evidence will still exist"). We are unpersuaded.

First, given that the only information about illegal activity occurring at the Residence consists of the CI's single observation of cocaine at an unidentified point in time, [RP 55] it is impossible to determine how stale that observation might be. Furthermore, we are not persuaded that the evidence of any ongoing criminal behavior by Diego Garcia at other locations remedies this deficiency. [MIO 11-17]

The State cites to this Court's opinion in *State v. Garcia,* 90 N.M. 577, 579, 566 P.2d 426, 428 (Ct. App. 1977), as support for its contention that the passage of time should be accorded less significance because the information in the affidavit reasonably supports a conclusion that the criminal activity is of an ongoing continuous nature. [MIO 8-9] We are unpersuaded because in *Garcia,* the confidential informant last observed heroin sales by the defendant at the subject premises approximately a month before the warrant issued, the informant had been at the subject premises on numerous occasions when the defendant had heroin for sale, and the informant had seen heroin on the subject premises a number of times. *Id.* We are not persuaded that the holding in *Garcia* warrants reversal in this case given the CI's one-time observation of cocaine at the Residence and given the lack of any other statements by the CI indicating that it observed any crime, of either an isolated or ongoing nature, taking place at the Residence.

We acknowledge that the affidavit also states that the CI saw Diego Garcia in possession of trafficking amounts of cocaine on more than one occasion within the past sixty days. [RP 55; MIO 9 n. 1] However, the CI never states that these observations occurred at the Residence. To the contrary, given the CI's express statements about what it observed at a different location, 2015 ½ Walnut SW, a common sense reading of the affidavit suggests that the CI may have observed Diego

6

Garcia with the cocaine at places other than the Residence, thus supporting an inference of trafficking at those other places. [MIO 9-11; RP 55] *Cf. State v. Donaldson*, 100 N.M. 111, 118-119, 666 P.2d 1258, 1265-66 (Ct. App. 1983) (stating that "[p]roof of possession of a large quantity of a controlled substance . . . is sufficient proof of trafficking in a controlled substance"). Given the absence of any information in the affidavit suggesting that the CI saw Diego Garcia in possession of cocaine at the Residence within the past thirty, or even the past sixty days, there is nothing to suggest that cocaine remained at the Residence after the CI's one-time observation at the unspecified point in the past. [RP 55]

To summarize, our understanding of the State's arguments in its memorandum in opposition suggests that the State is attempting to bolster the CI's one-time observation of drugs at the Residence with evidence that the CI saw Diego Garcia with drugs at various other locations. [MIO 9-11] While the State may be correct that the CI's information suggests Diego Garcia was involved in a conspiracy to commit trafficking with Joe Garcia and Joe Garcia Jr., [MIO 11] that information only appears to support a search warrant for the residence of Joe Garcia and Joe Garcia, Jr., 2015 ½ Walnut SW, the location where the CI saw cocaine and marijuana within the past thirty days and where the CI saw Joe Garcia and Diego Garcia divide a large amount of cocaine. [RP 55]

The State also relies on the corroborating information in the affidavit and contends this information provides additional, more recent facts that refresh any possible staleness in the information provided by the CI. [MIO 12-17] We disagree. First, the information about a controlled buy involving an alleged co-conspirator of Diego Garcia fails to corroborate any information that drugs are likely to be found at the Residence because the controlled buy neither occurred at the Residence nor involved Defendant or Diego Garcia. [MIO 12; RP 56]

As to the information provided by the CCI, the State stresses the inherent reliability of a citizen informant. [MIO 14] *See In re Shon Daniel K.,* 1998-NMCA-069, ¶ 13, 125 N.M. 219, 959 P.2d 553 (recognizing that information provided by an identified citizen-informant "generally carries with it a presumption of reliability"), *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29. However, in this case even if the CCI was inherently reliable, and even if the affiant knew the CCI, [MIO 14] the CCI's information was allegedly derived from another trustworthy individual who is never identified, and thus there are no facts establishing the trustworthy individual's basis of knowledge or veracity. *See In re Shon Daniel K.,* 1998-NMCA-069, ¶ 13 (stating that any presumptions that a citizen informant is reliable may vanish if that informant remains unidentified without explanation or if "the affidavit is silent as to other facts corroborative of the informant's status" and

8

holding that "[a]n affidavit which merely sets forth a generic recitation that an individual is a 'citizen-informant' is insufficient to raise an inference that the informant is credible").

In opposing our analysis, the State cites to this Court's opinion in *State v. Gonzales*, 2003-NMCA-008, 133 N.M. 158, 61 P.3d 867, and urges us to consider the information supplied by the CCI as corroborating information that refreshes the CI's observations. [MIO 13-14] It claims the CCI's information "supplies context for evaluating the currentness of the information supplied by the CI" because the CCI reported criminal behavior "similar to that described by the CI within three days of the detective applying for a warrant." [MIO 14] We are unpersuaded because in *Gonzales*, the corroborating information was supplied by the victim's father, not an unidentified citizen informant. *Id.* ¶ 29.

In this case, as previously discussed, the corroborating information is supplied by the CCI who in turn received that information from an unknown trustworthy individual, and there is no information establishing the basis of knowledge or trustworthiness of the trustworthy individual. [RP 57] Given the lack of first-hand knowledge of the CCI, we disagree that any "corroborating" information supplied by the CCI serves to bolster the "currentness" of the limited information supplied by the CI as to criminal activity occurring at the Residence. [MIO 14]

9

Finally, we disagree with the State's contention that the officers' observation of Diego Garcia going to two other residences over a period of three days constitutes a "pattern" of behavior suggesting criminal behavior at the Residence. [MIO 12, 15-18] First, we are not convinced that two visits over the space of three days indicates a routine or "pattern" of criminal behavior. [MIO 18] *Cf. Vest*, 2011-NMCA-037, ¶ 20 (considering evidence of a pattern consisting of the affiant's observation of the defendant's residence on at least five occasions and his witnessing of "multiple vehicles arriving at the residence and staying only for approximately five minutes"); *State v. Doe*, 103 N.M. 178, 182, 704 P.2d 432, 436 (Ct. App. 1984) (stating that the defendant's conviction for trafficking was supported by "evidence of *heavy traffic* to and from his home" (emphasis added)).

Moreover, we disagree that Diego Garcia's two short visits to homes known to be involved with drug dealing, considered in context with the CI's controlled buy and the CCI's report of trafficking, suggest the strong likelihood of criminal behavior at the Residence at the time the warrant issued. [MIO 15-16; RP 56-57] As previously discussed, neither Diego Garcia nor the Residence was implicated in the controlled buy. Furthermore, the CCI was merely passing on a general observation regarding trafficking that was reported by another unidentified individual. [RP 56-57] In addition, there is nothing in the affidavit indicating that Diego Garcia ever took

contraband back to the Residence and no indication that anyone ever came to the Residence seeking narcotics. [RP 55-57] Finally, although the State cites to *State v. Eskridge*, 1997-NMCA-106, 124 N.M. 227, 947 P.2d 502, as support for its contention that a known drug dealer's short visit to a residence corroborates an informant's tip, it is of note that in that case the State conceded that neither the visit nor the tip established probable cause. *Id.* ¶ 19. Instead, the issue was only whether the tip plus the visit were sufficient to establish reasonable suspicion to perform an investigatory stop. *Id.* ¶ 21. Therefore, even if all of the information, taken together, might support an inference that Diego Garcia was involved in trafficking, it nonetheless fails to support an inference that drugs were likely to be found at the Residence at the time of the search.

In conclusion, after reviewing the State's memorandum in opposition, we remain convinced the issuing court was incorrect in issuing the warrant because there was a lack of any information as to when the CI saw narcotics at Defendant's residence and a lack of any significant corroborating information supplied by the CCI or the officers' own investigation. Thus, we affirm the district court's finding that the affidavit failed to establish probable cause justifying the warrant because it failed to support a conclusion that narcotics would be found at Defendant's residence at the time the warrant issued and was executed by police officers.

**CONCLUSION**

For the reasons set forth above, as well as those discussed in our notice of proposed summary disposition, we affirm the district court's order granting Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**

13