This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **NO. 31,099**

**AARON RAMOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

In this appeal, Defendant contends that probable cause to issue a search warrant was not established where the veracity of the informant, who lied to police in his statement, was not confirmed, and the officer failed to corroborate the informant's claims. We reverse the district court's order denying Defendant's motion to suppress.

**BACKGROUND**

On November 17, 2009, affiant Detective Sergeant Kenneth L. Cramer (Officer Cramer) was contacted by a confidential informant (the CI) who stated that he had made arrangements to buy an eightball of cocaine from Orlando T. Williams, Jr. (Williams) for $380. Officer Cramer told the CI to set up the buy for the morning of the next day, November 18, 2009, and for the buy to take place at the Muddy Grubby Car Wash on Highway 70 in Ruidoso Downs, New Mexico. Officer Cramer met with the CI prior to the buy, outfitted the CI with a wireless transmitter, searched the CI's car and person, transferred $380 in marked bills to the CI, and kept the CI under constant surveillance. Officer Cramer observed a white Pontiac approach the CI's vehicle; Williams was seated in the passenger seat of the white Pontiac. Williams exited the white Pontiac and got into the passenger side of the CI's vehicle. Officer Cramer listened to the buy, and he saw Williams exit the CI's vehicle and return to the white Pontiac. Officer Cramer then issued the arrest order to other officers who were standing by. The officers arrested Williams, the driver of the white Pontiac, Mr. Guy

Bell (Bell), and the CI (to maintain his cover). Officer Cramer recovered the $380 and a bag of white powder in a velour bag from Williams; Officer Cramer also recovered a bag of white powder from the CI.

At the police department, Officer Cramer read Williams and Bell their *Miranda* rights and interviewed each of them on video. The affidavit then states:

> 19. Affiant was present when . . . Bell admitted that the white powder on the straw [found in his pants pocket] was cocaine and that he used cocaine.
>
> 20. Affiant questioned . . . Williams . . . after reading him [his] Miranda rights, which he waived, and . . . Williams . . . admitted to selling the CI a bag of white powder for $380[] representing it to the CI as cocaine, but said that the powder was baking soda and not really cocaine.
>
> 21. Affiant learned from . . . Williams . . . that he had obtained the white powder from [Defendant] who Williams said was going to give him part of the money for selling it to the CI.
>
> 22. Affiant photographed, weighed and field tested the white powder which showed positive for cocaine.
>
> 23. Affiant learned from . . . Williams . . .that he had obtained the cocaine which he sold to the CI from [Defendant] at a house where [Defendant] resides behind Laser Car[][W]ash, 705 Mechem Drive, Ruidoso, New Mexico.
>
> 24. Affiant learned from . . . Williams . . .that while he was at the residence on the property, . . . he observed both cocaine and methamphetamines on the morning of November 18, 2009.

25. Affiant learned from . . . Williams . . . that [Defendant] keeps the methamphetamine in a spray starch can that opens to reveal a compartment where the methamphetamine is hidden.

26. Affiant learned from . . . Williams . . . that [Defendant] hides controlled substances in various places in the house including light fixtures, compartments in the wall, and heat ducts.

27. Affiant has conducted previous investigation into [Defendant], determining that he occupies the residence at the rear of Laser Car Wash. . . .

28. Affiant has observed during surveillance that cars frequently come to the residence and the occupants go into and stay at the residence for only a short period of time, usually less than [two] minutes.

29. Affiant has observed that the volume of cars coming to the residence . . . for those short term visits are sometimes as high as [ten to twenty] cars per day.

Officer Cramer prepared the affidavit on the same day as the controlled buy and the arrest and interview of Williams, a district court judge authorized a search warrant for Defendant's residence at 705 Mechem Drive, Ruidoso, New Mexico, and it was executed the same day. The officers discovered two packages of white powder and two packages of crystalline substance in Defendant's bedroom in a can of RAVE brand hair spray that had a false bottom, as well as other packaged contraband, drug paraphernalia, and a semi-automatic pistol. Defendant was charged with trafficking cocaine and methamphetamine, distributing marijuana, using or possessing drug paraphernalia, and possessing a firearm by a felon.

4

Defendant filed a "constitutional challenge to the veracity of affidavit for search warrant and motion to suppress." Defendant included a chronology of November 18, 2009, and several exhibits: Officer Cramer's affidavit for the search warrant, the video recording of Officer Cramer's interview with Williams, a field test photograph, an audio recorded interview with Officer Cramer, Officer Cramer's investigative report, a booking surveillance video of Williams and Bell, and Officer Cramer's intelligence report dated November 12, 2009. The State responded. The district court held a hearing during which Defendant cross-examined Officer Cramer attempting to prove the officer's statements in the affidavit included deliberate falsehoods or demonstrated a reckless disregard for the truth material to the probable cause determination. After the hearing, the district court denied Defendant's motion to suppress.

The district court observed that the affidavit makes it clear that Williams was involved in a drug transaction that day and that Williams was facing criminal prosecution for selling cocaine or for selling baking soda as an imitation controlled substance. The district court also observed that Williams made statements against interest and that there was independent information that Defendant was engaged in drug trafficking at his house. Based on Officer Cramer's testimony at the hearing, the district court observed that the officer had overstated his observations of drug

trafficking at Defendant's residence, but ruled: "That does not make [the overstatements] false." Defendant entered into a conditional plea of no contest to three of the five charges, reserving the right to appeal the denial of his motion to suppress. The final judgment and sentence was filed on January 19, 2011. Defendant appeals.

**STANDARD OF REVIEW AND APPLICABLE LAW**

At the outset, "[w]e note this case involves the search of a dwelling place, an area that is ordinarily afforded the most stringent [F]ourth [A]mendment protection." *State v. Vest*, 2011-NMCA-037, ¶ 6, 149 N.M. 548, 252 P.3d 772 (alterations in original) (internal quotation marks and citation omitted), *cert. granted,* 2011-NMCERT-005, 150 N.M. 667, 265 P.3d 718. "The Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *State v. Nyce*, 2006-NMSC-026, ¶ 9, 139 N.M. 647, 137 P.3d 587, *overruled in part on other grounds by State v. Williamson*, 2009-NMSC-039, 146 N.M. 488, 212 P.3d 376. Probable cause to issue a warrant requires a factual showing "that there is a reasonable probability that evidence of a crime will be found in the place to be searched." *State v. Gonzales*, 2003-NMCA-008, ¶ 12, 133 N.M. 158, 61 P.3d 867.

Our inquiry on appeal focuses on the issuing judge's conclusion as to probable cause. *State v. Evans*, 2009-NMSC-027, ¶ 12, 146 N.M. 319, 210 P.3d 216. "[A]n issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." *Williamson*, 2009-NMSC-039, ¶ 29 (overruling in part all previous case law to the extent that the cases applied a de novo rather than substantial basis standard of review). "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30. Thus, "if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (alteration, internal quotation marks, and citation omitted).

When, as in this case, a search warrant is based on an informant's hearsay statements, the issuing judge may find probable cause where he or she is "provided with sufficient information to permit the court to evaluate (1) the basis for the affiant's and any informant's knowledge indicating the information relied upon was gathered in a reliable way; and (2) facts indicating that the informant or informants are credible or the information in the affidavit is accurate and worthy of belief." *In re Shon Daniel*

*K.*, 1998-NMCA-069, ¶ 9, 125 N.M. 219, 959 P.2d 553, *holding limited by Williamson*, 2009-NMSC-039; *see State v. Cordova*, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989) (adopting, as a matter of state constitutional law, the confidential informant test requiring both prongs to be satisfied as first formulated by the United States Supreme Court in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969), *overruled in part by Illinois v. Gates*, 462 U.S. 213 (1983).

In making the determination of facial sufficiency, we consider solely the information within the four corners of the affidavit submitted in support of a search warrant. *See Williamson*, 2009-NMSC-039, ¶ 31. If an affidavit is not facially sufficient to support a probable cause determination, then the warrant should not have issued and the evidence seized as a result of the search must be suppressed. *See Vest*, 2011-NMCA-037, ¶¶ 21-22 (invalidating a search warrant as facially insufficient and suppressing the evidence seized).

Even if an affidavit is facially sufficient, however, a defendant may be entitled to a hearing that delves below the surface of the affidavit if the defendant alleges and proves that the affiant's statements in the affidavit either constituted material deliberate falsehoods or demonstrated a reckless disregard for the truth of facts material to the probable cause determination. *See State v. Fernandez*, 1999-NMCA-128, ¶¶ 27, 30, 128 N.M. 111, 990 P.2d 224 (discussing the development of this area

8

of the law in New Mexico); *see also State v. Cervantes*, 92 N.M. 643, 648, 593 P.2d 478, 483 (Ct. App. 1979) (adopting the United States Supreme Court test set forth in *Franks v. Delaware*, 438 U.S. 154 (1978)). *But see State v. Donaldson*, 100 N.M. 111, 666 P.2d 1258 (Ct. App. 1983).

> The issue of whether facts intentionally omitted or misstated in an affidavit are of such materiality that their non-disclosure or misstatement may lead to invalidating the search warrant[] turns on whether these facts, because of their inherent probative force, give rise to a substantial probability that, had the information been set out or correctly stated in the affidavit, it would have altered a reasonable magistrate's determination of probable cause.

*Id.* at 117, 666 P.2d at 1264. Thus, in order to suppress evidence after inquiry beyond the four corners of the affidavit, the defendant must show either "deliberate falsehood," or "reckless disregard for the truth," as to material facts in the affidavit. *Fernandez*, 1999-NMCA-128, ¶ 34 (internal quotation marks omitted). "A merely material misrepresentation or omission is insufficient. 'Deliberate' and 'reckless disregard' are each a step beyond 'intentional.'" *Id.*

**ANALYSIS**

We first examine the four corners of the affidavit to determine whether it is facially sufficient. If it is not, then the search warrant should not have issued and the evidence seized must be suppressed. Even if it is facially sufficient, however, we may examine whether the district court erred in allowing Defendant to cross-examine the

9

officer/affiant to inquire beyond the four corners of the affidavit. If the district court did not err in allowing such inquiry, we examine whether the officer's statements in the affidavit constitute deliberate falsehoods or demonstrate a reckless disregard for the truth as to facts material to the probable cause determination. We turn now to examine whether the affidavit is facially sufficient within its four corners.

Upon examination of the four corners of the affidavit, we see numerous problems with its facial sufficiency. First, Williams is identified by name in the affidavit, and Williams is the person who identified Defendant as the source for the white powder. We have recognized that, because the strictures of *Aguilar-Spinelli* are primarily aimed at unnamed police informers, the identification of the informant by name is a significant factor in determining the reliability of the information. *See State v. Dietrich*, 2009-NMCA-031, ¶¶ 12-13, 145 N.M. 733, 204 P.3d 748. Disclosure of an informant's identity only creates a presumption of the informant's inherent credibility, however, and "[i]n such case the affidavit must contain sufficient additional information to show the informant is telling the truth." *In re Shon Daniel K.*, 1998-NMCA-069, ¶¶ 14-15. In this case, additional information to show that Williams is telling the truth is wholly lacking within the four corners of the affidavit. For example, although not all-inclusive, none of the factors that could have established Williams' credibility and reliability are present in this case. *Id.* ¶ 12

(recognizing that reliability of an informant may be established, among other ways, by showing that: "(1) the informant has given reliable information to police officers in the past; (2) the informant is a volunteer citizen-informant; (3) the informant has made statements against his or her penal interest; (4) independent investigation by police corroborates [the] informant's reliability or information given; and (5) facts and circumstances disclosed impute reliability" (citations omitted)).

First, the affidavit does not indicate that Williams has given reliable information to police officers in the past, nor are there facts or circumstances set forth in the affidavit from which to impute credibility or reliability to Williams' statements against Defendant. *See State v. Steinzig*, 1999-NMCA-107, ¶ 18, 127 N.M. 752, 987 P.2d 409 (discussing that to establish reliability or veracity, the affidavit must set forth sufficient facts for the issuing judge to independently determine either the inherent credibility of an informant or the reliability of the informant's information). In the affidavit, Officer Cramer states that he learned about Williams from a CI. While there are many statements in the affidavit about Officer Cramer's own experience investigating narcotics, there are no statements about Officer Cramer's prior contact or experience with the CI or with Williams. *Cf. Cordova*, 109 N.M. at 217-18, 784 P.2d at 36-37 (finding an informant to be credible based upon the affiant's statement that the informant had provided information in the past that the affiant found to be true

and correct from personal knowledge and investigation); *see also State v. Knight*, 2000-NMCA-016, ¶¶ 19-21, 128 N.M. 591, 995 P.2d 1033 (finding that the affidavit established the informant's veracity even though there was no history of the informant providing reliable information because the affidavit provided information of the informant's multiple meetings with officers and the informant's extensive cooperation). In this case, Williams appears in the affidavit as an unknown drug dealer/middle man caught in the act of selling drugs to the CI.

Similarly, while Officer Cramer describes the precautions he took to ensure the integrity of the controlled buy, the controlled buy did not involve Defendant—it took place between the CI and Williams. Further, while the affidavit describes how Officer Cramer carefully observed the controlled buy between the CI and Williams at the Muddy Grubby Car Wash, the controlled buy did not take place at Defendant's residence, the place named in the search warrant to be searched, nor at the Laser Car Wash in front of Defendant's residence. Thus, none of the details in the affidavit about the officer's experience or the controlled buy between Williams and the CI provide any independent basis for an issuing judge to determine Williams' reliability or credibility with regard to his statements against Defendant.

Second, Williams is not a volunteer citizen-informant. Officer Cramer learned about Williams from a CI and he subsequently observed Williams selling cocaine to

the CI. Officer Cramer arrested Williams immediately after the controlled buy and interviewed him at police headquarters.

Third, we cannot agree that Williams made statements against penal interest. *See State v. Torres*, 1998-NMSC-052, ¶¶ 13-15, 126 N.M. 477, 971 P.2d 1267 (discussing that the analysis regarding statements against penal interest involves a "fact-intensive inquiry that can only be answered in light of all the surrounding circumstances." (internal quotation marks and citation omitted)), *overruled on other grounds by State v. Alvarez-Lopez*, 2004-NMSC-030, 136 N.M. 309, 93 P.3d 699. Officer Cramer states in the affidavit that Williams admitted to Officer Cramer that Williams sold the CI a bag of white powder for $380. In the same sentence, Officer Cramer also states that Williams told Officer Cramer that Williams misrepresented the white powder as cocaine to the CI, when it was really "baking soda," not cocaine. At that point, Officer Cramer states that Williams identified Defendant and Defendant's residence as the source of the white powder. Officer Cramer then states that the "baking soda," tested positive as cocaine.

We do not construe Williams' "baking soda" statement as a statement against penal interest, simply because, as the State argues, there is a statute, obviously unknown to Williams when he made the statement to Officer Cramer, that makes selling imitation controlled substances a crime. *See, e.g.*, NMSA 1978, Section 30-

13

31A-4 (1983). Rather, the "baking soda" statement reflects Williams' obvious, but mistaken, attempt to exonerate himself to Officer Cramer for only intending to sell baking soda to the CI, rather than cocaine. Williams also attempted to shift the blame or seem cooperative with Officer Cramer for his own advantage, by naming Defendant as the person who tricked Williams and/or was the white powder supplier. Under the circumstances, the fact that Williams admitted that he took part in the controlled buy, especially when Williams knew the officer observed the controlled buy and arrested Williams during it, does not contribute to Williams' reliability or credibility with regard to his statements against Defendant. We conclude that Williams' baking soda statement and his identification of Defendant as the white powder source, are not statements against penal interest that serve to bolster Williams' reliability or veracity.

Finally, the affidavit does not adequately show that Officer Cramer independently corroborated the veracity of Williams' statements against Defendant. *See, e.g.*, *State v. Therrien*, 110 N.M. 261, 263, 794 P.2d 735, 737 (Ct. App. 1990) (stating that for corroboration to provide veracity, observations of officers must corroborate the allegation of criminal conduct), *overruled in part on other grounds by State v. Barker*, 114 N.M. 589, 844 P.2d 839 (Ct. App. 1992). As mentioned above, Defendant did not participate in the officer-observed controlled buy and the controlled buy did not take place at Defendant's residence. As for other forms of independent

14

corroboration, in the affidavit, Officer Cramer states that he "has conducted previous investigation into [Defendant]" and that he knows that Defendant lives at the address he is applying to search. Officer Cramer also states that he "has observed during surveillance" frequent traffic at Defendant's residence, "as high as [ten to twenty] cars per day" stay for short periods of time "usually less than [two] minutes." These statements reflect that Officer Cramer previously investigated Defendant for some unknown reason, and previously conducted drug-selling-related surveillance, observing frequent short-term traffic at Defendant's residence, at some unknown time in the past. Moreover, because the affidavit was prepared immediately after the controlled buy and Williams' arrest and interview, an issuing judge cannot infer that any of the asserted previous investigation, surveillance, or observation took place in response to the information that Williams gave to Officer Cramer, or to corroborate it. Finally, the fact that Williams told Officer Cramer that he saw controlled substances at Defendant's house in certain places the morning of the controlled buy, does not contribute to *the officer's* obligation to independently and timely corroborate Williams' statements against Defendant. *See Vest*, 2011-NMCA-037, ¶¶ 21-22 (invalidating a search warrant, because in the affidavit the affiant did not timely corroborate, with, for example, his own observations in the same time period

15

addressed by the informant, the reliability of the informant's report that the defendant had present possession of marijuana).

We conclude, therefore, that the affidavit presents insufficient facts from which an issuing judge could determine that Williams is credible or that the information Williams supplied to the affiant about Defendant is accurate and worthy of belief. We hold that the affidavit is facially insufficient, that the warrant should not have issued, and that the evidence seized pursuant to it must be suppressed. Finding the affidavit insufficient within its four corners, we need not address whether the district court's inquiry beyond the four corners of the affidavit was appropriate in this case, or, if so, whether Officer Cramer's testimony at the hearing reflects that his statements in the affidavit contained deliberate falsehoods or demonstrated a reckless disregard for the truth as to facts material to the probable cause determination.

**CONCLUSION**

We reverse the district court's decision to deny Defendant's motion to suppress and remand for the district court to strike the search warrant and enter an order suppressing the evidence seized pursuant to it.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

16

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**